## Case No. 8,024.

LAMB et al. v. WAKEFIELD et al.

[1 Sawy. 251.] [1]

Circuit Court, D. Oregon.    Aug. 9, 1870.

OREGON DONATION ACT—WIFE'S SHARE — DEED BEFORE TITLE OBTAINED—POSSESSORY RIGHTS —TENANT IN COMMON—COVENANT IN DEED.

1. Under section 4 of the donation act (9 Stat. 497), upon the death of the wife of the settler, after compliance with the law, and before patent issues, the share of the wife is granted by the act to her husband and children, and they take as donees of the United States, and not as heirs of such wife.

2. A deed by a tenant in common for his interest in a particular part of the land held in common, although void as against his co-tenants, is good against himself and those claiming under him.

3. A deed by which Daniel H. bargained, sold, etc., all his right, title, interest, claim and demand to block 252 in the city of Portland, only passed to the purchaser the one fifth interest in the premises which Daniel H. then had.

[Cited in Traver v. Baker, 15 Fed. 192.]

4. Where such deed contained a covenant to warrant and defend said lands to the purchaser, it must be construed to mean only the right, title and interest in such lands, bargained and sold by said Daniel H.; the covenants cannot enlarge the premises of a deed.

[Cited in Hull's Adm'r v. Hull's Heirs, 35 W. Va. 165, 13 S. E. 49.]

5. A covenant to warrant and defend the bargained premises against all persons, except the United States government, or those deriving title therefrom, does not estop Daniel H. or his heirs from claiming title to an interest in the premises subsequently purchased from Isabella E. Potter, a donee of the United States.

6. The effect of the decree of August 12, 1865, in the suit for partition of the Nancy Lownsdale tract, considered and declared, as between the heirs and vendees of Daniel H. in any particular tract allotted to them according to their respective interests.

[This was a bill in equity by John R. Lamb and Emma Lamb, his wife, and Ida Squires against L. H. Wakefield, Henry W. Corbett, John Connor, J. P. O. Lownsdale, Ruth A. Lownsdale, and Mary E. Cooper, for partition of certain real estate. The case is heard upon bill, answer, and proofs taken.]

W. Lair Hill and W. W. Page, for complainants.

Erasmus D. Shattuck, for defendants.

DEADY, District Judge. This suit was commenced August 7, 1869, for partition of block 252, in the city of Portland, and to apportion and provide for the payment of a certain lien thereon of $1,423.92. On October 2, 1869, the defendants, Wakefield, Connor and Corbett, demurred to the bill for misjoinder of parties defendant and for multifariousness, because such defendants were not all interested in the whole premises, but only in separate and different portions of it. After argument the demurrer was overruled for the reason that as the lien for the owelty extended to the whole premises, it was necessary and proper to make all persons interested in any part of the premises defendants, and partition the whole premises in one suit, so as to enable the court to completely apportion and provide for the extinguishment of the lien aforesaid.

Afterwards, on January 27, 1870, the defendants, Wakefield and Connor, answered the bill jointly and thereby claimed to be the sole owners of the northerly half of the premises, and the defendant, Corbett, answered separately, claiming to be the sole owner of the southerly half thereof. To these answers the plaintiffs filed general replications. The other defendants, being united in interest with the plaintiffs, made no defense to the bill.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

On May 24, 1870, the cause was to be heard upon the bill, answers and replications and the testimony of the parties taken orally before the court. From these it appears:

I. That the plaintiffs, John R. Lamb and Emma Lamb, his wife, and Ida Squires, her sister, are citizens of the state of Kentucky, and the defendans are citizens of the state of Oregon; and that the said Ida and Emma are the daughters of Sarah M. Squires, who died prior to 1856, and that said Sarah M. was the daughter of Daniel H. Lownsdale, who died intestate, May 4, 1862; and that the defendants, Mary E. Cooper, J. P. O., Ruth A. and Millard O. Lownsdale, are the children of said Daniel H.

II. That Daniel H. Lownsdale and Nancy, his wife, were settlers upon the public lands in Oregon, under the act of congress of September 27, 1850, commonly called the "Donation Law," and that before March 12, 1858, and before the issue of a patent to said settlers for said land so settled upon, said Nancy died intestate, and thereupon said Daniel H., as the husband of said Nancy, and William Gillihan, and Isabella Ellen Potter and Ruth A. and Millard O. Lownsdale, as the children of said Nancy, under and by virtue of section 4 of said act, became seized in fee simple as tenants in common of an undivided one fifth, each, of the west half of the land so settled upon, containing a fraction over 89 acres, and including the premises in controversy, and commonly called the Nancy Lownsdale tract; and afterwards, on June 6, 1865, a patent to the lands so settled upon, was duly issued by the United States, granting the east half thereof to said Daniel H., and the west half thereof to said Nancy, their heirs and assigns respectively.

III. That on March 12, 1858, said Daniel H., by his deed, duly executed for the consideration as therein expressed of $600, "bargained, sold, assigned, transferred and conveyed to Alexander Hamilton all his right, title, interest, claim and demand, either in law or equity," to the premises in controversy, described by metes and bounds as "block numbered 252," "upon the extended plat of the city of Portland," as well as the south half of block 253 on said plat. The deed contained the following and only covenant by said Daniel H.: "And I hereby guarantee to warrant and defend said lands to said Hamilton, his heirs and assigns forever, against the lawful claims of all persons except the United States government or those claiming title from said government;" and on January 23, 1860, Isabella Ellen Potter, aforesaid, and her husband, by their joint deed, duly executed, among other things, "released and quitclaimed" unto said Daniel H. "all their estate, right, title and interest" in the said Nancy Lownsdale tract; and on February 14, 1860, said Daniel H., by his deed, duly executed, among other things, "released and quitclaimed" unto Hannah Smith all his "right, title and interest" to two undivided fifths of the interest in said Nancy Lownsdale tract, conveyed to said Daniel H. by the deed of Isabella Ellen Potter and her husband, aforesaid; and on February 23, 1869, said Hannah Smith and her husband, Hiram Smith, by their joint deed duly executed, for the consideration as therein expressed of $1,005, "released and quitclaimed" unto the defendant, J. P. O. Lownsdale, all their "right, title and interest" to the aforesaid two undivided fifths of the interest in said Nancy Lownsdale tract, released to said Hannah Smith by said Daniel H. as aforesaid.

IV. That on August 12, 1865, in a suit brought for the partition of said Nancy Lownsdale tract, by said William Gillihan against one William A. Abbott and others, including all the heirs of said Daniel H. and Nancy, and the parties hereto, except the defendants Wakefield, Connor and Corbett, a decree for partition and the payment of owelty, was duly given and entered by the circuit court of the state for the county of Multnomah, and that in and by said decree, which remains in full force and effect, it was adjudged and determined, that said Daniel H. in his life time was the owner of two undivided fifths of said tract, and that the other three-fifths thereof belonged to said William Gillihan, Millard O. and Ruth A. Lownsdale; and that by said decree, certain portions of said tract were allotted and set apart in severalty to said William, Millard O. and Ruth A., and the remainder thereof was set apart in gross to the heirs or vendees of said Daniel H., according to their respective interests therein, whatever they might be; and because of the inequality in the quantity and value of such partition, as between the children of Nancy Lownsdale and the heirs and vendees of said Daniel H., it was further adjudged and determined by said decree, that the portion or parcels allotted to the latter should pay to the former the gross sum of $39,156 02, owelty, to be distributed among and imposed upon such parcels in proportion to their respective value, and that $1,423 92 of said gross sum was, by said decree, assessed upon said block 252 and made a lien thereon in favor of the heirs of said Nancy aforesaid.

V. That whatever interest said Hamilton acquired in the premises in controversy, by the deed of March 12, 1858, of Daniel H., has been since acquired by said Wakefield and Connor in the northerly half thereof and by said Corbett in the southerly half thereof, by means of good and sufficient conveyances from said Hamilton and his grantees to said Wakefield, Connor and Corbett; and that, at the date of the partition by the decree aforesaid, the interest in the premises conveyed by said Daniel H. to said Hamilton, as aforesaid, was owned by said Abbott as the grantee of said Hamilton; and that said Abbott, or his grantees, have paid to the children of said Nancy the said sum of $1,-423 92, assessed upon the premises in con-

troversy, as aforesaid, and by the terms of said decree, have a lien thereon for the repayment to them of such sum, in case they should be ejected from the premises.

VI. That the premises in controversy have been cleared of stumps and enclosed with a cheap plank or picket fence, by Hamilton, or those claiming under him, inclusive of these defendants, but that the same have not been otherwise occupied or used by them, and that in the meantime, said Daniel in his life time, and the defendant, J. P. O. Lownsdale, as his administrator, has had the general possession of the tract, including said premises; and that the same are now worth, in coin, between five and six thousand dollars.

Two questions arise in this case, and have been argued by counsel:

1. What is the effect of the deed of March 12, 1858, or what interest in block 252, passed by it to Hamilton and those claiming under him—the defendants W., C. and C.; and

2. How did the partition aforesaid affect such interest, if any.

It appears from the facts stated, that at the date of the execution of the deed from Daniel H. to Hamilton, the former had an undivided one fifth interest in the Nancy Lownsdale tract, including the premises described in the deed, and no more. This interest he held as the direct donee of the United States. Upon the death of the wife Nancy, after the completion of the residence and cultivation, and before the issue of the patent, her share of the donation was in effect granted or limited over, by the act, to her husband and children in equal parts. Fields v. Squires [Case No. 4,776]; section 4, Donation Act.

After some dispute it has been settled that the deed of a tenant in common for a particular part of the premises held in common, although void as against his co-tenant, is good against himself. Dennison v. Foster, 9 Ohio, 130; Varnum v. Abbot, 12 Mass. 476; Stark v. Barrett, 15 Cal. 364. In the partition, the court having seen proper to allot this block to the heirs and vendees of Daniel H. according to their respective interests, whatever they might be, his co-tenants at the time of making the deed are without interest in the premises, and therefore the deed is no longer void as to them, but is valid to all intents and purposes.

The granting clause of the deed only purports to convey the then right, title and interest of said Daniel H. in the premises to Hamilton. That interest was an undivided one-fifth. Any interest which Lownsdale might subsequently acquire in the premises would not be affected by a conveyance of his right, title and interest at that time. This proposition is too plain for argument, and too well settled in this court to need the citation of authorities. Afterwards, on January 27, 1860, as has been stated, Daniel

H. purchased another one fifth interest in the Nancy Lownsdale tract from Isabella Ellen Potter, two fifths of which he subsequently conveyed to Hannah M. Smith. It follows that at the time of the partition aforesaid the grantees of Hamilton were the owners of an undivided one fifth of block 252, and the heirs of Daniel H. and Hannah M. Smith as his grantee, were the owners of the undivided fifth purchased from Isabella Ellen Potter, unless the covenant in the deed from Daniel H. to Hamilton would bar him or those claiming under him from asserting any claim to such after acquired fifth.

The covenant is to warrant and defend such lands (block 252) to said Hamilton, etc. But by the premises of the deed only the right, title and interest of Daniel H. is bargained and sold to Hamilton. It is a well settled rule of law that the premises or granting clause of a deed may limit and control the covenants, but the covenants can never enlarge the premises. 2 Washb. Real Prop. 665; Blanchard v. Brooks, 12 Pick. 65; Comstock v. Smith, 13 Pick. 120; Fields v. Squires [supra]. This being so, the word "lands" in this covenant can have no other effect than the words in the premises of the deed which only describe the right, title and interest that Daniel H. then had in the land.

But there is another conclusive reason why the covenant does not affect the after acquired interest. This covenant is a special one—"against the lawful claims of all persons, except the U. S. government or those deriving title from said government." Isabella Ellen Potter obtained this fifth as has been shown from the U. S. government and her grantee Daniel H., and all those claiming under him as subsequent vendees or heirs, "derive their title from said government." There can be no pretence then that this covenant applies to this after acquired fifth, or was intended to meet such a case. The parties have expressly excepted the title of the U. S. from the warranty, and this exception left Daniel H. at full liberty to acquire such title to all or any portion of the block and hold and transmit it without restraint or hindrance from this covenant.

The covenant is practically a nullity and absurdity. In any event no effect could be given to it except upon the improbable, if not impossible, contingency, that some person might set up a valid title to the premises other than one derived from the United States—as for instance from Great Britain, Spain or France. As the parties to this deed may be safely presumed to have known that this was originally public lands of the United States, and that no valid title thereto could be derived from any other source than the United States government, it is difficult to conjecture what was the object intended to be accomplished by this covenant. However that may be, it cannot prevent the plaintiffs from asserting their title

to an interest in four fifths of the premises, for two reasons: First, the law acting upon the reasonable presumption that a party does not warrant the title to a greater interest than he sells, will not construe this covenant as being applicable to any other or greater interest in the premises than the undivided fifth thereof then owned by the covenantor and bargained and sold to the covenantee; second, the title now asserted by the plaintiffs to an interest in such four fifths is derived from the United States government and therefore expressly excepted from the operation of the covenant. Cole v. Hawes, 2 Johns. Cas. 203; Fields v. Squires [Case No. 4,776].

As to the effect of the partition upon the interests of these parties in this block, the point was considered and decided by this court in the case of Fields v. Squires, supra, and again in Lamb v. Burbank [Case No. 8,012], decided at this term. These decisions were to the effect that the parties to the partition neither gained nor lost by it. This is a well established rule in partition, whether it be made by the decree of a court or by the mutual deeds of the parties. Dawson v. Lawrence, 13 Ohio, 546. For instance, the interest sold to Hamilton in block 252, being only one fifth, it was neither increased nor diminished by the partition. The other four fifths of the block belonged to the heirs of Daniel H. and Hannah M. Smith and the children of Nancy—three fifths to the latter. By partition the children of Nancy were divested of their three fifths interest in this and other parcels of the tract, and this three fifths was by the same means vested in the heirs of Daniel H., in exchange for the two fifths interest of such heirs in the parcels allotted by the decree to the children of Nancy. To this exchange the grantees of Hamilton contributed nothing and took nothing by it. But this partition being unequal as to quantity and value, owelty was given by the decree to Nancy's children as a compensation for such inequality. For the purpose of protecting their individual interests from being sold to pay this owelty, these defendants, or those under whom they claim, have voluntarily paid the same. In making the partition, provision must be made to repay these defendants four fifths of this owelty with interest, or continue their lien for it.

A decree will be entered, to the effect, that the plaintiffs and defendants are seized in fee simple of the premises as tenants in common, and that the interest therein of Emma and Ida, aforesaid, is $84/1250$ each; and that the interest therein of said J. P. O. Lownsdale is $328/1250$; and that the interest therein of said Mary E. Cooper and Millard O. and Ruth A. Lownsdale is $168/1250$ each; and that the interest in the northerly half thereof of said Wakefield and Connor is $125/1250$ each; and that the interest in the southerly half thereof of said Corbett is $250/1250$, and that three commissioners, to be named by the parties or by the court, be appointed to partition the premises among the tenants to ascertain and report to the court whether it is practicable so to partition the premises, and whether or not it would be best to sell the premises and apportion the proceeds among the tenants after satisfying the liens thereon, or that the premises should be apportioned as between these defendants and their cotenants, and that the portion in each half of said block allowed to the latter be sold and the proceeds thereof partitioned between them after paying the owelty and the interest thereon due these defendants; and that the case be referred to the clerk of the court as a special master to take and state an account between these defendants and their cotenants as to the value of permanent improvements made thereon and taxes paid, if any, by the former.

[For other suits involving the plaintiff's title under D. H. Lownsdale to parts of the Portland land claim, see Cases Nos. 8,012, 8,017, 8,015, 8,023, 4,769, 4,775, 4,776; and under Nancy Lownsdale, Cases Nos. 8,021, 8,022, 8,013.]