# CHARLESTOWN.

## PITZER, ADMR., *v.* BURNS.

1873.
August Term.

### August 22, 1873.

1. The limitation in equity, as against mortgages and deeds of trust conveying property to a trustee, to secure the payment of debts, when the statute of limitations does not govern, is twenty years; and, under circumstances, a greater period. Such limitation is barred upon presumption of payment, and not upon analogy to the statute of limitations, as applicable to the action of ejectment or any other real action; but by analogy to the limitation from presumption of payment in actions at law, upon a single bill, if it is not a mere rule of equity.

2. In a suit in equity to enforce a deed of trust given upon land to secure the payment of money, the fact that the grantor remained in possession of the land for 17 years, after the right to sell the property to pay the debt accrued, does not operate a bar to the suit.

3. In a suit commenced in 1867, and pending on the 1st day of April, 1869, and at no time barred, in computing the limitation to the action, the time from the seventeenth day of April, 1861 to the 1st day of March, 1869, must be excluded from the computation.

4. B., on the 26th day of September, 1845, executed a deed of trust conveying to C. land in trust, to secure the payment of a debt of $300 with interest from the date aforesaid, to F., and other debts to other persons. The deed of trust provides that if the debts therein named are not paid within one year, that the trustee shall sell the land at public auction to pay the debt. On the same day the deed of trust was executed, F. executed to B. a writing, in these words: "It is hereby understood and agreed that if I do not succeed in clearing B. of either of the suits now pending in the circuit court of law of Berkeley county by H., assignee of W. G. B., then the note embraced in a trust deed of this date, to be void and of no ac-

count: if I succeed in clearing him of but one of the two cases, it is void as to all but one hundred and fifty dollars, or the one half.

September 26, 1845.                    F."

F. was at the time the counsel and attorney of B., to defend said pending suits, in the writing mentioned.—HELD:

That to read said writing with the acknowledgement of debt to F. contained in the deed of trust and give it the most liberal construction, it can only have the effect to make the debt of F. conditional, and a substantial compliance with the condition, by F., is sufficient, in equity, and the debt then became payable and F. entitled to enforce the deed of trust, in equity, for the payment of his debt and interest.

This was an appeal, by John Burns, from a decree of the circuit court of Berkeley county, rendered on the fourth day of November, 1870, in a suit therein pending, between John W. Pitzer, administrator of John H. Likens, deceased, Dennis Murphy and Charles James Faulkner, complainants, and John Burns, John P. Kearfott, administrator of Samuel D. Campbell, deceased, John S. Light, Bartley Pitts and Ruth his wife late Ruth Burns, John W. Pitzer, administrator of Meverell Locke, deceased, Jacob Vandoren, Jr., survivor of the late partnership of Robert C. Briarly & Co, John W. Pitzer, administrator of Robert Campbell, deceased, Joseph Hoffman and John P. Kearfott, executor of Joseph Gorrell, were respondents.

The Hon. Ephraim B. Hall, judge of the said circuit court, as organized under the Constitution of 1863, presided at the decision of the suit below.

The facts sufficiently appear in the opinion of the court.

*C. W. B. Allison,* for the appellant.

*William L. Wilson,* for the appellees.

HAYMOND, PRESIDENT:

The plaintiffs filed their bill in equity in the circuit court of Berkeley county, in a cause commenced on the the seventh day of September, 1867. The bill was filed

at October rules, 1867; and it alleges that on the twen-ty-sixth day of September, 1845, the defendant, John Burns, Jr., of Berkeley county, executed a deed of trust making Samuel D. Campbell the trustee, and conveying his undivided moiety of a tract of two hundred and seventy-one acres of land to secure debts named in the deed of trust, among others, a debt due to plaintiff Faulkner for $300, with interest from the date of the deed of trust, and that the debts due to John H. Likens and Dennis Murphy, are not ascertained, in amount, in the trust deed: That by the terms of the deed of trust, the grantor therein, was, allowed until the twenty-sixth day of September, 1846, to pay the debts, before any sale should be made, under the terms of the deed of trust. The bill also alleges that the plaintiff Faulkner has more than once written to defendant Burns, requesting payment of interest upon his debt, but he has paid no attention to the letters: That he felt reluctant to enforce the trust against him, as at the time of its execution the grantor was considerably involved in debt, &c.: That Campbell the trustee, is dead, and that there are several other creditors named in the trust deed who may, or may not, have been satisfied. The bill makes Burns, and the administrator of the trustee, and all the other creditors named in the deed of trust, defendants, and prays that the true amount of the debts of the trust creditors be ascertained by a commissioner; that another trustee be appointed in place of Campbell, deceased; that the interest of Burns in the tract of land be sold, if necessary, for the payment of the trust debts unpaid, &c.

An office copy of the deed of trust is filed with the bill and it purports to be an indenture "between John Burns, Jr., of the county of Berkeley and State of Virginia, of the first part; Samuel D. Campbell, of the county and State aforesaid, of the second part; and Ruth Burns, of Platte county, and State of Missouri, Charles James Faulkner, of Berkeley, Virginia," &c.: and it recites among other

things, that "the said John Burns, Jr., is further indebted to the said Charles James Faulkner, in the sum of $300, with interest from the twenty-sixth day of September, 1845," and conveys to Samuel D. Campbell one undivided moiety of a tract of land in the county of Berkeley, on the waters of Opequon creek, containing about two hundred and seventy-one acres, devised to John Burns, Jr., by the last will of his father, George Burns, deceased, of record in the county court of Berkeley, together with a moiety of all the improvements on the same, *in trust*, nevertheless, that is to say, if the said John Burns, Jr., shall not pay to the creditors named in the deed of trust, on, or before the twenty-sixth day of September, 1846, the several sums of money specified as due to them, with interest on the same as before stated, &c., then the trustee shall proceed to sell the land at public auction, &c. and out of the proceeds of sale shall pay the several debts with their accruing interest, &c. There is this clause in the deed of trust, viz: "It is understood and agreed between the parties to this deed that the property hereinbefore conveyed shall remain in the possession and custody of the said Burns until the sale may become necessary, under the provisions of this deed ; and further, that the trustee shall not be responsible for the same, except for loss and injury, after the same may come into his possession as trustee as aforesaid."

The defendant Burns filed his answer, to which a general replication was filed by plaintiff Faulkner. In his answer Burns says that "the debts due by him to the plaintiffs and to the other parties named in the trust deed filed with the plaintiff's bill, have all been fully paid and discharged long since, except the claim stated to be due to Charles James Faulkner;" as to which, the answer states in substance that on the day of the execution of the deed of trust, Faulkner executed a paper to him (Burns) setting forth that if he (Faulkner) should not succeed in clearing him (Burns) from certain suits brought against him by Minor Hurst, assignee of G. W.

Burns, then the claim, to-wit: $300, and the same stated in the trust deed should be void, or if he should succeed in clearing him of, or defeating, only one of said suits the claim should be reduced to $150, and that he (Burns) will exhibit evidence of the payment, and of the paper or agreement executed by Faulkner; and he (Burns) says that Faulkner did not succeed in clearing him of, or defeating, either of the claims, and he pleads that he did not assume to pay any of said claims within, five, ten, fifteen, or twenty years prior to the institution of this suit; and therefore he claims the benefit of the plea of the statute of limitations in bar of each of said claims. The paper alluded to in the answer of Burns, as being executed by Faulkner, is filed and proven, and is in these words, viz: "It is hereby understood and agreed, that if I do not succeed, in clearing John Burns of either of the suits now pending in the circuit court of law of Berkeley county, by Minor Hurst, assignee of W. G. Burns, then the note embraced in a trust deed of this date to be void, and of no account; if I succeed in clearing him of but one of the two cases, it is void as to all but one hundred and fifty dollars, or the one-half. September 26, 1845.

CHAS. JAS. FAULKNER."

Plaintiff Faulkner was at, before and after, these transactions a practicing attorney in the circuit court of Berkeley county, and was also the attorney of Burns in said causes. The cause was in September, 1868, referred by the circuit court to a commissioner with instructions to ascertain and report the debts embraced in the deed of trust which remain due and unpaid, &c. The commissioner, in his report, made in pursuance of the order of reference, reports that all the debts mentioned in the deed of trust have been paid, except the debt of Faulkner, the only evidence of which is the face of the deed of trust, and was at the time of the execution thereof, September 26, 1845, $300; and that the interest on the same to the 26th of April, 1869 is $424.50, making

in the aggregate $724.50. The commissioner states in his report that "This debt is claimed by the defendant Burns for reasons shown in his answer to the bill in this cause, not to be due to Mr. Faulkner. This, however, is not a matter to be determined by your commissioner, so far as the statute of limitations is concerned." The report was filed by the commissioner, in the clerk's office on the 22d of March, 1869, and no exceptions were ever filed thereto. The depositions of defendant Burns, and plaintiff Faulkner were taken, and they, with the exhibits accompanying the same, therein referred to and mentioned, are also filed, and appear in the cause. The cause was heard by the circuit court, on the 4th day of November, 1870, on the papers theretofore read and upon the report of the commissioner, and the depositions and exhibits therewith filed. On the consideration whereof, the court being of opinion that the statute of limitations, pleaded in the answer of defendant Burns, is no bar to the right of complainant, Charles J. Faulkner, to enforce his debt by a sale of the property conveyed in trust for its security, the said deed of trust being an instrument under seal; and the court being further of the opinion, upon the evidence in this cause, that the debt claimed by the complainant Faulkner, is justly due him; the court decreed that if the defendant John Burns, fails to pay to the plaintiff, Faulkner, on or before the 1st day of January, 1871, the sum of $752, his debt and interest up to the date of the decree, with interest from the date of the decree, together with costs, &c., then in case of such default, John Blair Hoge was appointed a special commissioner to sell a sufficient amount of the land to pay the debt, interest and costs. It appears in the case that the tract of 271 acres of land, in the deed of trust mentioned, was, before the rendition of the decree of sale, partitioned, in someway, by metes and bounds, and that John Burns' part contained 135 acres. These facts are stated in the decree, and commissioner Hoge is directed to sell so much of the 135 acres, belonging to

Burns, as will be sufficient for the purpose aforesaid.

From this decree of sale, Burns appealed, and he now claims in this court, by his counsel, that the decree of sale is erroneous and should be reversed for the following reasons : viz:

1. That, from the papers and evidence in the cause the debt claimed by Faulkner, and decreed to him, was, never, at any time, due and owing from him (Burns) to Faulkner.

2. The statute of limitations applies to actions at law, and not in terms to a suit in equity, upon a mortgage, or deed of trust, but courts of equity enforce the statute of limitations by way of analogy—and as against a mortgage, or provisions to secure these debts, a deed of trust is executed, and that the period that will bar an action of ejectment should bar a suit in equity, to foreclose a mortgage upon land or to sell land conveyed in trust, to secure a debt. And that the statute of limitations as to the action of ejectment, was, in the county of Berkeley, at, and before the commencement of this suit, fifteen years —that counting out the time from the 17th day of April, 1861, to the 1st day of March, 1865, as required by law, at the commencement of this suit, seventeen years after the cause of action accrued, if any ever did accrue, this suit was commenced, and the court should have dismissed the bill. The second objection will be considered first.

The principles which apply to mortgages in equity so far as limitations are concerned, in case of the mortgagee foreclosing his mortgage, and the beneficiary party in a deed of trust asking to have the deed of trust executed, by a sale of the trust property, are similar, if not identical. There has been great variety, and confusion in the decisions of the various courts of the Union upon the subject of mortgages, and especially, touching the limitation which should be allowed to operate a bar to the mortgagee to foreclose his mortgage, and the mortgagor to redeem, after the mortgagee has entered upon for condition broken. "In equity, the

interest of a mortgagee is essentially different from that at common law. It has two aspects, one before, and the other after the condition of the mortgage has been broken, and sometimes a third, where this breach has been followed by actual possession taken of the premises, by the mortgagee. Besides, recourse is often necessary to be had to the forms of law in order to enforce a mortgagee's rights. Here a different set of terms is made use of, in relation to his interest from those used in considering it in equity. In one connection, it may be spoken of as a personal interest, in the other as a legal estate. As a general proposition, equity regards a mortgage, especially before the condition is broken, as creating an interest in the mortgaged premises of a personal nature, like that which the mortgagee has in the debt itself. It treats the debt as the principal thing, and the land as a mere incident to it. Whatever it does with the land is auxiliary to enforcing payment of the debt. Hence arises two sets of rules in respect to the rights and interest of every mortgagee in England, and in this country, except in those States, where the one, or the other, is superseded or modified, by legislation or local law. And the confusion, if confusion it is, that may have arisen in administering these two systems, may be ascribed in some cases, at least, to the same court, exercising both law and equity jurisdiction, as is the case in several of the states. In some of the states the form of enforcing a mortgage is by process at common law, the statute working out a foreclosure by lapse of time. In others, the form is by process in equity, by a decree of foreclosure, such as, ordinarily, is adopted in England. In others still, the form is by a sale of the premises, effected through a decree in chancery. Besides this, in several of the States, as in England, a mortgagee may obtain possession of the premises by a writ of entry or process of ejectment, in which his legal rights are chiefly or alone regarded." Wash. on Real Prop., vol. 1, 2nd ed., 544, 545, and the many authorities there cited in

notes. The same author, in same volume, at page 601, section 25, says: "A mortgagor may be barred of his right of redemption by limitation, where the possession of the premises has been adverse for twenty years or a shorter period, conforming to the statute of limitations of the State where the land lies, as where the mortgagee has been in possession, during that time, without recognizing that he held under his mortgage. In such a case, the law presumes the equity extinguished. But no length of time of holding possession by a mortgagee will bar the right of redemption, if the mortgage is treated during that time, as a subsisting security for the debt."

The same author, in the same volume, on page 603, section 27, says: "On the other hand, there are presumptions in favor of the mortgagor, arising from long continued possession by him of the mortgaged premises, without paying rent, or interest, or admitting the existence of an outstanding mortgage debt. If this is continued for twenty years after condition broken, it raises the presumption that the debt has been paid, and the mortgage redeemed. And a bill for foreclosure on the part of the mortgagee would thereby, ordinarily, be barred. But it would seem that there must be something on the part of the mortgagor showing, affirmatively, that he does not hold in subordination to the mortgagee's title, in order to have the time of limitation begin to run. But the mortgagor may give to his possession an adverse character by some unequivocal act, hostile to the title of the mortgagee, and brought distinctly home to his knowledge. Such act, however, must be a clear, open, explicit denial of the mortgagee's title, and a refusal to hold under it, brought home to the knowledge of the mortgagee. And until then the statute of limitations does not begin to run, and in this the English and American law coincides." In *Harrison v. Harrison*, 1 Call., 419, it was held by the court that "There is no positive direction in the statute that the court of chancery shall be bound by the periods prescribed in the

Pitzer, Admr.,
v.
Burns.

law; but that court adopts them by analogy to the rules of law." In the case of *Ross v. Norvell*, 1 Wash., 14, it was decided by the court that "The reason why twenty years is generally fixed upon as the time within which an application to redeem must be made, is not because the right of redemption, after such a lapse of time, is presumed to have been abandoned. Slaves may be redeemed after 5 and within 20 years." In that case, on page 24, the court says, in its opinion, "A more correct principle would seem to be that after twenty years, a dereliction of the right of redeeming, ought to be presumed, as a debt due by bond, or even a judgment, is presumed paid if that length of time has elapsed without payment of interest, or some acknowledgement which may repel the presumption." See also case of *Robertson v. Campbell and Wheeler*, 2 Call., 421.

Story, in his 2d vol. of Eq. Juris, page 296, section 1028 b., says: "Similar considerations, will, in many respects, apply to the right of foreclosure of a mortgage. If he has suffered the mortgagor to remain in possession for twenty years after the breach of the condition, without any payment of interest or admission of the debt, or other duty, the right to file a bill for a foreclosure will generally be deemed to be barred and extinguished. However, in cases of this sort, as the bar is not positive, but is founded on presumption of payment, it is open to be rebutted by circumstances." 20 Missouri, 488. In *Giles v. Baremore*, 5 John, Ch. 550, it was held, as to a mortgage, that "Presumptions of the payment founded on lapse of time are matter of evidence, and not in most cases, *proprio jure*, matter of plea in bar." In *Bradford Hilland v. Alvan Shurtleff*, 2 Met., (Mass.) 26, it was held that "Continued possession of mortgaged premises, by the mortgagor and his heirs, for twenty years after the mortgage debt was payable, without any entry or claim by the mortgagee, constitutes a presumption in fact that such debt has been paid." This is the syllabus, but it will be seen by reading the opinion of the court, on page 28,

that some importance is attached to adverse possession, and also to presumption of payment, as in the case of a bond.—*See page* 27. In the case of *Hammonds v. Hopkins,* 3 Yerg. (Tenn.) 528, it is held "that time in the court of equity has been taken in analogy to the statute of limitations is admitted. But what is meant by this expression, in analogy to the statute? We do not understand by the terms used that we are to take the same period which the statute has fixed for the courts of law. All that is intended to be expressed is, that equity will interpose her rules as to periods within which she will act upon rights purely equitable. She will not enforce stale equities, but will rather, when great length of time has intervened, decline her interference upon a presumption, that if the claim had been well founded, and had not been satisfied, it would have been presented earlier." See Hilliard on Mortgages, section 34, pages 18 and 19. In Hilliard on Mortgages, page 8, section 12, it is said: "So Prof. Greenleaf remarks, that the supposed relation of the mortgagor to the mortgagee, as his tenant, is not allowed to operate against the presumption of payment arising from the mortgagor's continued possession. After twenty years, this presumption may be made, even in chancery." The same author, on page 24, section 52, a., says: "The lapse of twenty years, without payment of interest, or demand made, the mortgagor being in possession, will raise the presumption that the debt has been paid; yet that presumption may be repelled by evidence that the mortgagor was a near relative of the mortgagee, or in embarrassed circumstances."

 In Angel on Limitations, fifth edition, page 451, section 450, it is said that, "It was held by Ch. J. Marshall, that the estate of the mortgager only was confiscated, not of that of the mortgagee. And that the possession of the mortgagor was not adverse." See this doctrine discussed, generally, by the same author in pages 449 to 456 inclusive. Authorities vary as to whether

1873.
August Term.

Pitzer, Admr.,
v.
Burns.

there is no bar, or that a mortgagee must, as to limitation, be put, in equity, upon the footing of a bond or other specialty as to presumption of payment. See same author page 453, sections 453, 454 and 455. In the case of *Clark v. McLure,* 10 Gratt. 309, Judge Allen in delivering the opinion of a majority of the court, says: "As a general rule, possession to give title, must be adversary. And where the defendant has entered under the plaintiff and acknowledged his title as that under which he holds, he cannot controvert it." And further on in the same opinion on page 314, he says: "In all these cases of vendee who has no deed, of lessee, mortgagor *cestui que trust,* &c., where one is in under the owner of the legal title, a privity exists, which precludes the idea of a hostile, tortious, wrongful possession, which could silently ripen into a title by adverse possession under the statute of limitations." In *Kirk v. Smith,* 9 Wheat. (Sup. Ct. U. S.) 241, Judge Marshall says: "It would shock the sense of right which must be felt equally by legislators, and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title."

In Virginia and West Virginia a deed of trust such as that in this case, has to a great extent been substituted for the mortgage, and it is regarded as a security for the debt. In the case of *Creigh's Heirs v. Henson,* 10 Gratt. 231, Judge Moncure says: "The possession of the grantor in a deed of trust after the execution of the deed, is not adverse to the title of the trustee, but only as his tenant at will or sufferance. The trustee may eject him without notice; or without ejecting him may convey the trust subject to a purchaser, whose tenant at will or sufferance, the grantor will then become, and by whom he may in like manner, be ejected without notice." This was held by the entire court as may be seen by the syllabus of the case. *See Newman v. Chapman,* 2 Rand. 93. In the case of *Jones' adm'r v. Conner's exor,* 5 Leigh 353, which was a bill filed to fore-

close a mortgage upon slaves alone, Judge Brockenbrough

in his opinion, from which none of the Judges dissented, says: "Admitting that the mortgage was executed to secure a *bona fide* debt, the next question is, whether according to the proofs in the cause, we ought not to refuse any relief to the plaintiff, on the ground, that from great lapse of time, the debt should be presumed to be paid or released. The mortgage was executed in August, 1786, the debt was made payable on the 1st of January, 1788, and the bill was not filed till August, 1812—a period of twenty-six years from its execution, and of even more than twenty-four years after the debt became due. Twenty years is a sufficient period to authorize the presumption of payment in debt on bonds; and when it appears that the debt had not been satisfied, the jury under particular circumstances, and on account of the great lapse of time, may presume it was released." Blanshard on Lim. 93; *Washington v. Brymer*, Peake's Evidence Appendix No. 4. So too, in mortgages, even on land, the right of redeeming after twenty years is presumed to have been abandoned, and *a fortioi* it applies to mortgages of slaves; and if the creditor does not seek to foreclose the equity of redemption within that time a strong presumption arises, that the debt has been paid, or the deed released. *Ross v. Norvel.* 1 Wash. 14."

A deed of trust is a sealed instrument and in this case it acknowledges a debt of $300 to be due Faulkner with interest from the twenty-sixth of September, 1845, payable the twenty-sixth of September, 1846.

From what has preceded it is clear that in Virginia the limitation in equity as against mortgages and trust deeds when the statute of limitations does not govern is twenty years, and that such limitation is based upon presumption of payment and even when more than twenty years has elapsed from the time the right to sue accrued, in some cases, under circumstances, payment will not be presumed. This limitation, acted on by courts of equity in Virginia, is not by analogy to the statute of limitations as applicable to

the action of ejectment, or any other real action, but by analogy to the limitation from presumption of payment, in actions at law upon a single bill, if it is not merely a rule of courts of equity. This it seems is but reasonable, for if it were not so, if a single bill were given for a debt secured by a deed of trust, and twenty years were the limitation to an action on the single bill, and fifteen years the limitation to an action of ejectment, the security for the debt would be barred by limitation, before the debt. This suit was commenced prior to the time the Code of this State of 1868 took effect, and was pending at that time, and according to its provisions no part of it, so far as limitations are concerned can effect it, or apply to it.

If the statute of limitation in the Code of 1849 and 50 and 1860 is applied to this case the limitation would be twenty years from the first day of July, 1850. It is true that the limitation to the action of ejectment at the commencement of this suit, in the county of Berkeley, was fifteen years. But the possession that will constitute a bar to an action of ejectment must be an adversary possession. Fourteen years after the date of the deed of trust Faulkner demanded the interest then due upon his debt by letter, as Burns admits, and eight years after that he demanded it again, and the debt not being paid this suit was brought. Counting out the period between the 17th day of April 1861, and the 1st day of March, 1865, as is proper in this case, only about seventeen years elapsed from the maturity of the deed of trust till suit was brought, which is not sufficient to authorize a presumption that Faulkner's debt was paid or to bar the suit under the provisions of the Code of 1849 and 1850. Applying the statute of limitations of 1849 and 50 to this suit as commencing to run on the first day of July, 1850, and counting out the period aforesaid, the time in which the suit might be brought has not yet expired. Leaving out the fact that a demand was made as above stated, seventeen years is the extent of

the lapse of time that Burns claims, and from his own statement giving it the most liberal construction, he never claimed to Faulkner, or the trustee, that he did not owe the debt until more than fourteen years after the execution of the deed of trust. · It has been held that an action of debt may be maintained upon a mortgage or any sealed instrument, acknowledging a debt. See the case of *Elder v. Rouse*, 15 Wend. (N. Y.) 218. The opinion in that case was delivered by Judge Nelson, and in his opinion many authorities are cited. *Demerritt v. Batchelder*, 8 Foster, (N. H.) 533. But whether an action of debt could be maintained on the deed of trust in this case or not, is immaterial now to determine, as it was not necessary to give validity to the deed, as constituting a lien for the payment of the debt, which equity will enforce, that there should have been a single bill or note given for the debt, or even an express promise of payment contained in the deed of trust. It is sufficient that the deed acknowledges the debt and conveys the property to secure its payment. It has been held that "although the plaintiff's remedy upon the note is gone, it does not necessarily follow that his right to resort to the pledge is lost. And it has accordingly been holden that, notwithstanding an action for the recovery of the debt is barred, the mortgagee may afterwards sustain a bill to foreclose the equity of redemption." *Belknap v. Gleason*, 11 Conn., 160; *Haskell v. Bailey*, 22 *Ibid*, 569 —573; *The Michigan Insurance Company v. Brown*, 11 Mich., 265; *Guy Hough v. Mary Bailey*, 32 Conn., 288.

If we read the memorandum given by Faulkner to Burns, of the date of the deed of trust, with the acknowledgement of the debt contained in the deed, and give it the most liberal construction, the effect can only be to make the debt of Faulkner conditional, and on the performance of the condition, it became payable. A substantial compliance with the condition in such case

1873.
August Term.
———————
Pitzer, Admr.,
v.
Burns.

is all that a court of equity will require. It is unnecessary to recite the evidence here, but the evidence in the record clearly shows a substantial compliance with the condition, and that Faulkner's debt is just. It was contended by the counsel for Burns that a different state of facts could have been shown if Burns had had more time to take and file testimony. If the case was not ready for trial when it was heard, and the decree appealed from was rendered, Burns should then, before the cause was heard, have applied to the circuit court for a continuance. This he did not do. This Court can determine the cause only from the evidence appearing in the record; and it acts on the principle, as a general rule, that that which does not appear does not exist, so far at least as relates to facts material in a cause, which are not proven, but might have been proven, if they existed.

For these reasons the decree of the circuit court of the county of Berkeley appealed from, must be affirmed with costs and damages according to law, and the cause be remanded to the circuit court of Berkeley county for further proceedings therein to be had, according to the rules governing courts of equity.

The other Judges concurred.

DECREE AFFIRMED AND SUIT REMANDED.