# CHARLESTON.

## Hull's Adm'r v. Hull's Heirs.

(Holt, Judge, Absent.)

Submitted January 20, 1891.—Decided March 21, 1891.

| 35 | 155 |
| 39 | 308 |
| 35 | 155 |
| 42 | 226 |
| 35 | 155 |
| 45 | 85 |
| 35 | 155 |
| 48 | 346 |
| 35 | 155 |
| 51 | 114 |

1. SALES—JUDICIAL SALE—SUBSTITUTION.

A purchaser of land under a void decree, whose money has been applied upon liens on the land valid against the owner of the land, will be entitled to charge such money upon such land by substitution to the right of the creditor, upon disaffirmance of the sale.

2. SALES—JUDICIAL SALE—CREDITORS' BILL.

Such purchaser may maintain a bill to enforce such right, and as incident to his relief make his bill a creditors' bill.

3. SALES—JUDICIAL SALE—DECREE.

A decree, which simply confirms a commissioner's report of debts and directs a sale of lands therefor in default of payment, though that report specifies the debts and priorities, is erroneous, because the decree does not itself adjudicate and declare what debts are to be paid, and fix their order and priority as to the lands to be sold therefor.

4. EVIDENCE—ADMINISTRATORS AND EXECUTORS—RECORD.

A record of a suit by an administrator and widow of a decedent, brought in Virginia against his heirs to sell lands there to pay debts and satisfy the widow's dower, wherein debts are decreed against decedent's estate and subjecting its assets, is not evidence, in a suit in this State against such heirs to subject lands of such decedent to pay such debts, to establish such debts or their amounts.

5. STATUTE OF LIMITATIONS—DECREE.

A decree in a suit by an administrator and a widow of a decedent brought in Virginia against his heirs to sell lands to pay debts and satisfy widow's dower will not save such debts from the statute of limitations for the purposes of a suit prosecuted in this State against lands here.

6. PURCHASE-MONEY—LIEN.

Where a bond is given for purchase-money for land, and secured by a lien in the deed of conveyance, the mere giving of a new bond or note in place of the original does not release the lien, but the lien is good for the new bond or note.

7. Purchase-Money—Statute of Limitation.

The statue of limitation does not apply to a lien for purchase-money reserved in a conveyance of land.

8. Warranty.

A deed conveys the "entire interest" of a grantor in land, and contains a covenant of general warranty. This warranty is limited and restricted to the interest conveyed, and does not warrant the land.

9. Warranty.

A covenant of warranty applies to the estate conveyed, and can not enlarge that estate.

*R. S. Turk* for appellant, cited 29 W. Va. 480; Id. 256; 22 W. Va. 207; Code. c. 130, s. 31; 1 Wash. 145; 10 Gratt. 284; 27 W. Va. 1; 24 Gratt. 302; 14 W. Va. 211; 21 W. Va. 601; 23 W. Va. 565; 30 W. Va. 195; Code, c. 104, s. 6; 24 W. Va. 279; 8 W. Va. 229; 22 W. Va. 303; Id. 474; Id. 500; 20 W. Va. 602; Code, c. 133, s. 8; 25 W. Va. 242; Code (1884) c. 132, s. 1; 26 W. Va. 691; 16 Gratt. 264.

*R. S. Parsons* for appellees, cited Code, c. 124, s. 14; 26 W. Va. 718; 22 W. Va. 208; Code, c. 132, s. 7; 23 W. Va. 827; 20 W. Va. 611; 25 W. Va. 265; 21 W. Va. 270.

Brannon, Judge:

This case, if we may call it the same case, is now the second time before this Court. The report of the former decision of this Court will be found in 26 W. Va. 1; where may be found a full statement of the facts up to the date of the former appeal. A chancery suit had been brought in the Circuit Court of Pocahontas county by Sheffy, administrator under a Virginia appointment of F. H. Hull, deceased, and Elizabeth Hull, his widow, to sell lands of said decedent lying in Pocahontas county, to pay debts of his estate, some of them alleged to exist as purchase-money-liens on said land, and to satisfy the dower-claim of said widow out of the proceeds of sale in lieu of dower in kind. A decree of sale was rendered, and said lands sold, and the sales confirmed; and then one of the heirs, after becoming of age, filed a petition showing cause against the decrees, and asking their reversal, and the restoration of

his share in the lands sold under the decree ; and, such relief having been denied him, he appealed to this Court, which rendered a decision holding that the plaintiffs in the suit could not maintain such a bill to sell said lands, and that the infant heirs of Hull were not parties before the Court, and therefore the decrees and sales were void, and remanding the cause to the Circuit Court, "with instructions to put all parties *in statu quo,* by requiring all persons who have received any of the purchase-money of said lands to refund the same with interest, and by refunding to the purchasers any money which they may have paid on their purchases with interest from the time when it was paid, and allowing them compensation for all permanent improvements put upon the land bought, and by requiring them to pay for the rents and profits of said lands from June 9, 1869, and by doing all other things necessary and proper to put all persons *in statu quo,* and, if necessary, to modify or change the above suggestions as to the mode of so doing in any way which, under the actual circumstances of the case, may be found necessary ; and the court shall otherwise proceed with this cause according to the principles laid down in this opinion, and, further according to principles governing courts of equity."

When the cause went back to the Circuit Court E. P. Hull, F. H. Hull, and Lillie E. Huff, heirs of F. H. Hull, moved the court to put them in possession of the lands of their father which had been sold under the void decree, but the court refused to do this. We think this should have been promptly done. This Court had held that there was really no suit, and that the decree of sale was void ; and having directed as the chief, I may say the sole, object of remanding the cause, that the parties should be put *in statu quo,* manifestly a restoration of possession to these heirs of the lands improperly sold from them under the void decree was a step—to said heirs the most important step—in the line of action indicated by this Court to put the parties *in statu quo.* The decree was the only right by which the purchasers had obtained, or could ask to retain, possession, and, that having fallen, what right had they to retain possession ?

If it be said that the money of these purchases had gone

to pay liens against the land, and the purchasers would be entitled to substitution, and ought to be allowed to retain possession in order that they might from the rents and profits reimburse themselves, these answers present themselves : (1) No decree had yet been made declaring them entitled to substitution; (2) the suit having been held to be one not properly brought to sell the lands or convene the liens, it could not, in its then state, be made the vehicle of enforcing the right of substitution, as it had no *locus standi in curia*, save only to restore the parties to the *status quo*, the only function which, by fair construction of the former opinion of this Court, this Court designed said cause thereafter to perform ; and (3) at that time the suit of *Dudley and others* v. *Hull and others*, below more particularly referred to, had not been brought. Should said heirs hereafter ask such possession, it should be given them.

The court made a reference, at the same time this motion for a writ of possession was made, (1) to ascertain all lands of Hull ; (2) all liens thereon ; (3) all debts due from his estate ; (4) to settle the accounts of his administrator ; (5) to ascertain the persons to whom purchase-money from such land-sales was paid, and on what account, calculating interest from date of payment; (6) to make an account of rents and profits of each tract sold under the decree from date of confirmation of sale ; (7) an account of permanent improvements, showing by whom made.

Now, some of these heads of reference were pertinent to the purpose for which the cause was remanded to the Circuit Court, and necessary to the excution of the mandate of this Court ; but so far as the reference directed the lands of which Hull died seised to be ascertained, and the liens and all the estate debts thereon and the settlement of the personal estate, with the view of converting the suit into a creditors' bill, the court was making the suit perform an office which it could not be made to perform consistently with the decision of this Court ; and had the suit gone on alone, and been treated as a creditors' bill, the action of so treating it would have been erroneous. All that it could do was to restore possession, and compel restitution from

those who had received money under a void and reversed decree, and repay those who had paid for land under it.

But this action of the court, in making a reference so comprehensive, becomes immaterial, by reason of the fact that afterwards Dudley and other persons, who had purchased lands under the said void decree, filed in the Circuit Court of Pocahontas county, a bill against the heirs and administrator of Felix H. Hull, deceased, and others, alleging that Hull died in Highland county, Va., leaving a widow and three children, his heirs, owning various lands, and was largely indebted at his death, and his estate, real and personal, in Virginia had been exhausted in paying his debts, leaving some unpaid; that among those unpaid were several vendor's liens on the lands in Pocahontas, to wit, one reserved to A. G. Mathews on certain tracts, and assigned to James H. Renick, and one to Mary Ann Mathews on certain land, and one in favor of Joseph McClung on certain lands; and alleging that Hugh Sheffy, administrator of Felix H. Hull, and Elizabeth M. Hull, his widow, had brought a suit in that court against the heirs of Felix H. Hull and others, asking to have said lands sold, and dower of said widow provided for out of their proceeds, and to have the balance of such proceeds, applied to discharge such liens on said lands; and that a decree of sale had been made in said suit, and that said plaintiffs and certain defendants had purchased certain tracts, respectively, at certain prices, under such decree; and that the purchase-money under such sales had been collected and applied under decree in the cause to the debts of Hull, to his widow, to attorneys and court officers for services in the cause; and then Felix H. Hull filed a petition to set aside the decrees in the cause; that the Circuit Court had refused to set aside such sales; that the case was appealed to the Supreme Court of Appeals, which had held all the proceedings in the cause void, and reversed the said decree, and remanded the cause to the Circuit Court for the purpose of placing the parties *in statu quo;* and alleging, further, that since the payment of the purchase-money for lands sold under said void decree many of the creditors had become insolvent; and praying that the accounts of the West Virginia

administrator of said Felix H. Hull, deceased, be settled, and his creditors convened, and that those who had purchased lands under such void decree, and whose money had been applied on debts and liens of said decedent, be subrogated to the rights of the creditors whose debts the money of such purchasers had gone to pay.

The said two causes, that of *Dudley and others* v. *Hull and others*, and that of *Hull's Adm'r et al.* v. *Hull's Heirs and others* (the Sheffy suit) were heard together, and a reference was made to a commissioner to ascertain all the lands of which Felix H. Hull died seised lying in Pocahontas, and all liens thereon; all debts due from his estate; to settle the administrator's accounts; to ascertain all purchase-money paid by the several purchasers of land sold under decree in the case of *Hull's Adm'r* v. *Hull's Heirs;* the amounts paid by each, and the date of payment, and to whom paid, and on what account, calculating interest from dates of payment; and to make an account of rents and profits of each tract which had been sold, and an account of all permanent improvements on each tract, showing by whom made.   Upon a report the court rendered a decree in the two causes, heard together in June, 1888, by which it confirmed the report, and decreed that, unless the debts by it reported be paid, the lands should be sold ; and from this decree Samuel Gibson, administrator of Felix H. Hull, has appealed to this Court.

It is urged by appellant that these plaintiffs in the new bill, Dudley and others, can not maintain a creditors' bill, because they are not creditors of Hull.  Technically they are not creditors, but only entitled to substitution under those who are creditors ; but, if so entitled, they get the rights of those who are creditors, and those creditors could maintain a creditors' bill, and, if the debts which their money paid were liens, they must or could convene the lienors, and, if not liens, they must convene the creditors generally, for they could only get a *pro rata* share in case of deficiency of assets.  Though I do not see that the court decreed the debts against Hull's estate, or directed the money arising from the sale to be paid thereon, yet if in fact they were paid thereon, we must treat Dudley and

others, plaintiffs in the new bill, as entitled to substitution to the debts which were paid by the moneys which they paid as purchasers under the void decree; for the case of *Haymond* v. *Camden*, 22 W. Va. 180, holds that "a purchaser of land sold under a void decree is entitled, upon the disaffirmance of the sale, to be substituted to the rights of the creditor, and charge the land with the amount of the debts paid by him." See *Hudgin* v. *Hudgin*, 6 Gratt. 320.

The position of appellant's counsel, that in *Haymond* v. *Camden* substitution was allowed only because Camden and Andrews asked that the debt might be ascertained, is untenable. The court gave that as a reason why, though the proceeding was void for want of jurisdiction as to them, substitution could be made in that proceeding, holding that they thereby waived objection to jurisdiction, save in those respects they excepted to it and submitted to the jurisdiction. The court, however, held the general proposition in a separate point that a purchaser under a void decree is entitled to be substituted to the debts his money pays. Principles of justice demand. this, and courts of equity have raised up this principle, a being of their creation, called "substitution," unknown to. common-law forums, to accomplish the ends of justice; and I know of no more signal instance to exemplify the disposition, as well as the power, of equity to adopt means to accomplish right, than this of substitution, accorded purchasers under void proceedings, whose money has gone to satisfy liens good against the debtor.

Another point made against the decree is that the most important parties, the heirs of Hull, whose lands were to be sold, were not before the court, because the affidavit on which rested the order of publication against them as non-residents was made before a notary in Virginia, and the certificate is simply signed by him, and is without notarial seal, and also wants a certificate of a clerk or other officer of a court of record of Virginia under official seal, verifying the genuineness of the signature of the notary, and his authority to administer oaths, as required by Code, c. 130, s. 31.

This objection is well taken. A party must be served

with process, and thus brought before the court, unless he be one against whom publication may be made, and the fact justifying such order must be made to appear as the law points out. The law requires an affidavit to establish that fact as a prerequisite or foundation for the order, and that affidavit, if made out of the state, must be certified as required by statute, to be admissible to show the fact of non-residence. Though the decree states that the non-residents had been "regularly proceeded against by order of publication, as the law provides," yet the affidavit and order, being a part of the record, show this defect. Though this be error, yet I do not think it avails the appellant, the administrator. Still it should be corrected in after-proceedings, as it might affect titles acquired under a decree hereafter. The decree does not declare on its face what particular debts shall be paid or fix their order, but simply decrees that, "unless the defendants, the administrator and heirs of the late F. H. Hull, deceased, or some one for them, shall within sixty days from the rising of this court pay to the special receiver in these causes the several debts reported by Commissioner Warwick against the estate of F. H. Hull, deceased, the lands should be sold." Such a decree is erroneous under the case of *Bank* v. *Wilson*, 25 W. Va. 242.

Judge Woods very properly said in the opinion in that case, "Upon its face it (the decree) neither ascertains the amount or priority of any debt, or the person to whom the same is to be paid;" and as he said in that case I say in this, that while the decree does refer to the report for the debts to be paid, that leaves every creditor to determine for himself, at his peril, the amount decreed him. I add that this report is complicated. A given debt is a specific lien on certain other lands, and a general charge on others; another debt is a specific lien on certain other lands and a general charge on others; and other debts general charges. The special commissioner and parties are to construe this report for themselves, at their peril, and fix the amounts of liens, their order, and what lands they bind; whereas, the decree should make these matters legally certain.

What debts were to be paid under this decree? The decree should have plainly declared what original debts of

Hull yet remained unpaid, and what particular purchasers were entitled to substitution, and in what sums, and out of what lands, after charging them with rents and profits, less permanent improvements and taxes paid. The heirs would know then how much was chargeable upon their estate, and in whose favor, if they desired to discharge it, and, in case a sale should be made, every original creditor would know how much was coming to him, and every purchaser would know how much he was entitled to for reimbursement or substitution; and thus they could bid at the sale with their eyes full open to their adjudicated rights.

As to the debts reported against Hull's estate: It is scarcely necessary to say that the parties, claiming substitution on account of moneys paid by them under their purchases of land having been applied on debts of Hull's estate, must show debts valid and binding said estate. The appellant's counsel contends that there was no evidence to establish the debts reported as debts binding Hull's estate. And here it is certain that the pleadings, depositions, or decrees in the case of *Sheffy, Adm'r* v. *Hull's Heirs*, in Pocahontas Circuit Court, can not be read as evidence against the heirs or Administrator of Hull to establish debts, for reasons already stated. It is also clear that the record of the case of *Sheffy, Adm'r etc.* v. *Hull's Heirs*, brought in Highland county, Va., can not be read to establish such debts. It was the same character of suit as that brought in Pocahontas by Sheffy, administrator, and Mrs. Hull against Hull's heirs, which this Court held to be a void proceeding; but, in addition, that Highland county suit was brought in another State to sell land and operate on personal assets there, and could by no means affect lands here; and the West Virginia administrator was not a party to it; and, if the infant heirs were parties, it could not establish debts not decreed against them personally, so as to bind lands here. The decree was only that, unless the estate debts be paid, the lands be sold.

The debt in favor of James H. Renick is sustained by the agreement of sale between Andrew Mathews and Felix H. Hull, dated 13th October, 1853, in connection with Uriah Hevener's deposition.

As to the bond of seven hundred and fifty seven dollars and eighty seven cents in favor of Ann M. Mathews the evidence is not clear to show that it is a remnant of purchase-money for land sold by Sampson Mathews to Hull and Warwick. The bond is of different date from the sale and deed, but is claimed to be a balance on settlement. As the deed from Mary Ann and Ann M. Mathews to Hull and Warwick, which must have been accepted by the grantees and put on record, recognizes money as yet unpaid on land, and the bond is signed by Hull and Warwick, the same parties alleged to have purchased the land, and as John W. Warwick's deposition virtually recognizes it as a purchase-money bond, I think we should say that it is established. Though given after said deed, being for purchase-money, it is entitled to the lien retained in the deed, as a release of the lien would not be presumed from the mere execution of a new bond. *Hess* v. *Dille,* 23 W. Va. 90 ; *Coles* v. *Withers,* 33 Gratt. 186 ; 2 Jones, Mortg. § 927 ; *Hopkins* v. *Detwiler,* 25 W. Va. 749.

As to debts of estate of Joseph McClung, I think the deed from McClung and wife to Hull, dated 26th September, 1855, found on record, and Hull's bond of two thousand five hundred dollars, of same date, to McClung, justify the report in considering that debt established ; but there is no evidence to sustain the item of nine hundred and thirty two dollars and fifty five cents, reported in favor of McClung's estate, except the Highland county record, which is incompetent, and it is barred by the statute of limitations. I think the claim of Hull's administrator for abatement from McClung's debt for loss of the five hundred acres was properly overruled. The deed of McClung and wife conveyed "their entire interest in the lands formerly owned by Jacob W. Mathews" in certain specified lands, "together with all their interest in the lands formerly belonging to said Mathews lying on Clover creek."

Where a deed conveys the grantor's right, title, and interest, though it contains in general terms a covenant of general warranty, the covenant is regarded as a restricted one, limited to the estate conveyed, and not one defending generally the land described. The covenant of warranty is

intended to defend only what is conveyed, and can not enlarge the estate conveyed. Wait, Act. & Def. 391; 3 Washb. Real Prop. 655; Rawle Cov. 420; *Sweet* v. *Brown*, 12 Metc. (Mass.) 175; *Allen* v. *Holton*, 20 Pick. 458; *Ballard* v. *Child*, 46 Me. 152; *McNear* v. *McComber*, 18 Iowa 12; *Kimball* v. *Semple*, 25 Cal. 452; *Blanchard* v. *Brooks*, 12 Pick. 47; *White* v. *Brocaw*, 14 Ohio St. 339; *Adams* v. *Ross*, 30 N. J. Law 510; *Lamb* v. *Wakefield*, 1 Sawy. 251; *Hope* v. *Stone*, 10 Minn. 141 (Gil. 114). Here the grantors conveyed only their interest. The land was in dispute, and Porter seems to have had superior title to it; and besides, the evidence tends to show that the deed does not cover the five hundred acres claimed as lost land.

The debts of Renick, Mathews and McClung above mentioned are purchase-money liens, and are not barred by the statute of limitations. *Heiskell* v. *Powell*, 23 W. Va. 718; *Wayt* v. *Carwithen*, 21 W. Va. 522. A lien for purchase-money reserved in a deed is treated as a mortgage or deed of trust, and the statute of limitations does not apply. *Coles* v. *Withers*, 33 Gratt. 186, 194; *Smith* v. *Railroad Co.*, *Id.* 620; *Lewis* v. *Hawkins*, 23 Wall. 119. It is clear that the statute does not run against mortgages and deeds of trust. *Criss* v. *Criss*, 28 W. Va. 396; *Camden* v. *Alkire*, 24 W. Va. 675; *Pitzer* v. *Burns*, 7 W. Va. 63; *Bowie* v. *School*, 75 Va. 300.

The debt reported at five thousand and three hundred and thirty five dollars and five cents, in favor of Benjamin F. Jackson, is not only not proven, except by evidence in the Highland cause, but is for an open account, the last item being in October, 1861, and is barred, and was improperly allowed. So, also, the Samuel V. Gatewood debt of one thousand and two hundred and twenty six dollars and and sixty eight cents is not proven, except by the Highland record, and is barred by limitation. The suit in Highland county could not operate to protect debts against the statute of limitation as to assets in West Virginia. There was no personal decree against the heirs; simply a decree ascertaining certain debts as existing against Hull's estate for the purposes of that cause—that is, against the Virginia lands of the estate—and was only a decree ad-

judicating such debts as existing by confirming a report finding them. And besides, it was a suit brought by the Virginia administrator and the widow to sell lands for debts, which they could not do, as there was no such statute as in this State allowing an administrator to maintain such a suit, and the widow could not do so; and as decided in *Hull* v. *Hull*, 26 W. Va. 1, such a suit was inefficacious to accomplish the purpose of keeping alive these debts. The suit in Pocahontas by said Sheffy, administrator, and the widow of Hull, being void, could not keep alive those debts; nor would the bringing of the suit of Dudley and others, within one year after the reversal by this Court in the case of *Hull* v. *Hull*, operate to save the debts from limitation, under section 19, c. 104, Code, as it was a void proceeding. It does not, in fact, appear that the Dudley suit was brought within one year after the 25th of April, 1885, the date of such reversal, as the summons in it is not in the record.

I think the land owned by Hull jointly with others should have been divided before sale. I do not think that the parties claiming substitution had right to set off one third of rents and profits as for land to which the widow of Hull was entitled, and be charged with only two thirds of rents and profits. A widow has no estate by reason of her dower right till it is actually assigned. *Tomlinson* v. *Nickell*, 24 W. Va. 160; 27 W. Va. 709. I find no decree assigning her dower, or declaring the money value of it, or directing its payment. It was probably in the power of the court to appoint a special receiver to receive and disburse the moneys under the sale, but I do not see why special commissioners could not do so, after giving bond.

The decree complained of is reversed, and the cause remanded, to be further proceeded in according to the principles herein indicated, and further according to principles governing courts of equity.

REVERSED. REMANDED.