# CHARLESTOWN.

## CRISS v. CRISS, et al.

Submitted June 12, 1886.—Decided September 18, 1886.

1. The statute of limitations to a suit to enforce a debt bars the remedy but does not extinguish the debt; and therefore, if the debt be secured by a deed of trust, though the action for its recovery be barred, the enforcement of the lien by deed of trust is not affected by any lapse of time short of a period sufficient to raise a presumption of payment. (p. 396.)

2. The presumption of payment arising from mere lapse of time is the same, whether the debt is evidenced by a bond or by a note, and whether it be or be not secured by a deed of trust. (p. 397.)

3. The presumption of payment of such a debt so evidenced in the absence of all proof arises after a lapse of twenty years and not before, though a period somewhat short of twenty years will raise such presumption, if it is aided by surrounding circumstances rendering it probable, that such debt has been paid. (p. 400.)

4. The fact, that the time, in which a right of entry on land is barred, or the right to bring an action of ejectment, has been reduced to less than twenty years by statute, does not operate to reduce the time, in which a presumption of the payment of such a debt arises, and therefore does not affect the time, in which real estate

may be sold to pay such debt, when it is secured by a deed of trust on such real estate. (p, 401.)

5. In calculating whether the twenty years necessary to raise the presumption of the payment of such a debt has elapsed, such time must be excluded, if any, in which for any reason the creditor has no legal right or power to bring a suit for the debt. (p. 403.)

6. But though more than twenty years have elapsed, the presumption of payment may be rebutted by satisfactory proof, that the debt has not been paid. (p. 403.)

*J. J. Davis* for appellant.

No appearance for appellee.

Statement of the case by GREEN, JUDGE:

This was an action for the partition of a tract of land near Clarksburg in Harrison county, W. Va., containing about forty-three acres, which descended from Michael Criss on his death among his heirs and among others, who had purchased the interests of several of the heirs therein. The bill, which was filed in the circuit court of Harrison in 1875, prayed for a partition of this land in kind among those entitled thereto, or, if partition can not be so made, that a sale thereof be decreed, and a partition of the proceeds of this sale be made between the plaintiff, Mary V. Criss, and the defendants according to their several interests. There were some controversies and disputes between the plaintiff and certain of the defendants in this cause, which not being involved in the appeal to this Court I deem it unnecessary to state : It will suffice to say, that on June 12, 1876, the circuit court of Harrison decided, that the interest of the heirs of Michael Criss would be promoted by a sale of this forty-three acres as well as of two lots owned by him at the time of his decease, located in Clarksburg, and John Bassel was appointed a commissioner to make said sale, and said decree decided also, who would be entitled to the proceeds of the said forty three acres, and what proportion of said proceeds was coming to each of the parties respectively, several of which shares in the proceeds of such sale were liable to the payment of certain liens upon them, all of which liens are specified in said decree having been previously as-

certained by a commissioner's report. John Bassel, the commissioner of sale, sold said forty three acres on July 11, 1876, for the sum of $3,225.00. The plaintiff, Mary V. Criss, being the purchaser. On July 11, 1876, the court confirmed this sale ; and after allowing to the commissioner certain compensation and directing, that a certain sum be paid to the widow of one of the heirs of Michael Criss as the value of her dower, the court decreed, that the said commissioner, John Bassel, do pay to the plaintiff and the several heirs of Michael Criss, deceased, out of the proceeds of said sale, when collected, the respective amounts due them according to their respective interests therein as ascertained in a former decree, except as it was otherwise ordered by this decree of July 11, 1876, or by this former decree. This decree then proceeds as follows :

" And the defendant, Aaron Criss, this day files his separate answer to the plaintiff's bill ; and it appearing therefrom, that the defendant, A. S. Criss, executed to said Aaron Criss a deed of trust upon the interest of said Andrew S. Criss in said land and lots on September 22, 1845, and the defendant, Aaron, claiming the interest of said Andrew S. Criss in said land and lots, it is ordered, that said Bassel do retain the interest of said Andrew S. Criss in said lands and lots subject to the further order of this court."

The following is the answer of Aaron Criss referred to in this decree :

" To the Hon. C. S. Lewis, judge of the circuit court of Harrison county :

"The separate answer of Aaron Criss to a bill exhibited against him and others by Mary V. Criss.

"Respondent for answer says that it is true that he is one of the heirs of Michael Criss, deceased, and that said Michael's heirs at law are the persons named in said bill. Respondent further says that said Michael died seized in fee of the land described in said bill, and two lots in the town of Clarksburg. Respondent further says that the defendant Andrew S. Criss on September 22, 1845, conveyed to Augustine J. Smith, as trustee, his (Andrew S.) undivided interest in and to said land and lots and certain personal property to secure respondent in the sum of $470.00 due him from said Andrew S.

Respondent further says that said Andrew S. used, enjoyed, and disposed of all the personal estate embraced in said deed for his own use and benefit without devoting any part thereof to payment of respondent's said debt, and has never paid said debt or any part thereof to respondent, and respondent asks that the interest or share of said Andrew S. in the proceeds of the sale of said land and lots be applied in payment of respondent's said trust. Copy of said trust is herewith filed marked "XX"; and having answered respondent prays hence to be dismissed, &c.                    AARON CRISS.

"JOHN BASSEL, Counsel."

The deed of trust filed with this answer states, that Andrew S. Criss the grantor is justly indebted to Aaron Criss $470.88, for which he that day executed his note on a settlement that day made between the parties. To secure this note Andrew S. Criss conveys to A. J. Smith, trustee, all the grantor's undivided interest in the real and personal estate of Michael Criss, deceased, and also one sorrel horse, one milch cow and his household and kitchen furniture all specified, and which was but small in value, together with apparently all his other property even down to a violin, which was all obviously of very little value. The deed of trust was dated and recorded September 22, 1845; and the note, which it was given to secure, was payable September 22, 1846.

On December 1, 1876, the defendant, Andrew S. Criss, filed his answer to the bill, which was replied to generally. The answer was as follows:

" The defendant admits that he is one of the children and heirs at law of Michael Criss, deceased. He also admits that his father, the said Michael, died seized and possessed of the land and lots named in said bill, and that defendant is entitled to an interest therein.

" Since his interest in said estate was ascertained by a former decree in this cause, Aaron Criss, his brother and co-defendant, has set up a claim against this defendant and is seeking to subject his interest to the payment of a debt of $470.88, alleged to be due, and secured by a deed of trust made by this defendant on September 22, 1845.

"Defendant admits that he executed the trust to said Aaron at the time stated, but he utterly denies that he is indebted

to said Aaron one cent on said trust, and the said Aaron well knows the fact; as from the time of making said trust to the filing of his said answer, said Aaron has never made a demand for his said debt. More than thirty years have elapsed since the making of said trust deed, and defendant insists that if said debt was originally a valid one, (as it was not), and defendant Aaron ever had cause of action therefor, that the seme is barred by the statute of limitations. This defendant, therefore, insists that if the said Aaron ever had any cause of action or suit against this defendant for or concerning any of the matters in the said trust mentioned, which the defendant doth in no sort admit, such cause of action accrued above twenty years before the filing of the answer of the said Aaron, or before the institution of this suit, nor has this defendant at any time since the making of said trust, or within twenty years before the institution of this suit, or at time before the filing of said Aaron's answer therein, promised and agreed to pay said debt. This defendant, as the only means of protecting himself against the stale demand of his codefendant Aaron, is compelled to plead the statute of limitations in bar thereof. He therefore insists that his interest or share in the proceeds arising from the sale of the land and lots aforesaid is not and cannot be made liable to the payment of said debt. Wherefore he prays that commissioner John Bassel be directed in the distribution of the proceeds of the sale of said land and lots to pay over to the defendant his interest therein.

"*Davis* for defendant.                A. S. CRISS."

The following is the deposition of Aaron Criss taken September 9, 1876, after due notice to Andrew S. Criss:

"Question 1st.—State your name, age, present place of residence, and where you resided from 1843 to 1866.

"Answer.—Age, sixty-five years; place of residence, Baltimore, State of Maryland; I resided in Clarburg, Harrison county, Virginia, from 1843 to 1866.

"Question 2d.—Look at the paper annexed, marked XX, and purporting to be a deed of trust executed by Andrew S. Criss to Augustine J. Smith for your benefit, and state whether the debt secured therein has ever been paid, or any part of it?

" Answer.—The deed of trust executed by Andrew S. Criss to Augustine J. Smith for my benefit, on September 22, 1845, was a *bona fide* transaction. He, the said Andrew S. Criss, owing me the amount specified therein, not one dollar of which has ever been paid.

" And further the deponent saith not.

"A. CRISS."

This being all the evidence touching the subject of controversy, the court decided it by the following decree rendered on January 17, 1877 :

"This cause came on again to be heard upon the matter raised by and contained in the answer of defendant, Aaron Criss, to the plaintiff's bill, and the answer of defendant, Andrew S. Criss, to said bill. And it is here agreed by the said Aaron and Andrew S., by their counsel, that the answer of said Aaron Criss shall be treated as a cross bill as to the matters contained therein, and the answer of said Andrew S. as an answer to said answer, treated as a cross bill, and that the matters contained in said answers shall be heard as if upon cross bill, answer thereto and general replication thereto. And it is further agreed by said Aaron and Andrew S., by their counsel, that Augustine J. Smith, the trustee in the deed of trust executed by said Andrew S. to said Aaron, dated September 22, 1845, is dead, and that said matters may be heard without the appointment of another trustee, and without making the personal representative of said Smith a party to this suit. And this cause now coming on to be heard upon the said answer to be treated as aforesaid, upon the deposition of said Aaron Criss, upon said deed of trust-upon former orders and decrees, and upon the papers here, tofore read in this cause. After argument of counsel the court is of opinion and doth adjudge, order and decree that the deed of trust executed by said Andrew S., as aforesaid, dated September 22, 1845, is a lien upon one undivided twelfth part of the tract of land containing forty three acres, mentioned and described in the bill and proceedings of this cause, as well as upon the undivided twelfth part of the two lots in Clarksburg, mentioned in said bill and proceedings, and that said Aaron is entitled to the one undivided twelfth part of the proceeds of said land and lots, after deducting

costs as hereinbefore directed, that the said Andrew S. would have been entitled to but for the lien of said deed of trust. And it is further ordered that the said one twelfth part of such proceeds be paid by John Bassel, the commissioner who sold said land and lots, to said Aaron Criss, and that he pay the residue of the interest of said Andrew S. in said land and lots to him, said Andrew S.

"The report of partition made pursuant to a decree entered in the above styled cause, on December 8, 1875, is .in the words and figures following:

### "REPORT OF PARTITION.

["For plat, &c., see page 50 of Transcript of Record.]

"Surveyed for Michael Criss' heirs forty three acres of land near Clarksburg as shown by the above plat. Scale twenty poles to the inch. Variation one degree thirty minutes East. Calculated by tables of Lat. & Dep.

"J. N. WILKINSON, Surveyor.

"December 9, 11 and 13, 1875."

From this decree Andrew S. Criss obtained an appeal.

Opinion by GREEN, JUDGE:

Omitting for the present any consideration of the pleadings or the manner, in which the point in controversy is presented to us, the only question substantially in this cause to be decided by us is, whether the court of equity in 1876 should have permitted Aaron Criss to enforce by sale a deed of trust dated and duly recorded September 22, 1845, given by his brother Andrew S. Criss, whereby he conveyed to one Smith as trustee his interest as heir in his father's real estate situated in Harrison county, then in Virginia, to secure a promissory note given by the grantor to his brother, Aaron, or a settlement of accounts between them, which note was for $470.88 with interest from its date, September 22, 1845, and was payable one year after its date, there being also conveyed by said deed of trust a small amount of personal property, and the only evidence before the court being that the interest of the grantor in said real estate was one undivided twelfth part thereof, and that this interest was worth in 1876, when it was proposed to foreclose this deed of trust, about $325.00, and the deposition of Aaron

Criss, that this transaction was *bona fide*, and that, though this debt had been due thirty years, no part of it had ever been paid by his brother, Andrew S. Criss.

The principles, which should control this Court in deciding, whether it would permit this deed of trust to be enforced after a lapse of thirty years, are the same as those, which would control the Court, if Andrew S. Criss had given a mortgage on this real estate to his brother, and he was now asking the court to sell the real estate so mortgaged to pay the debt. A trust-deed to secure a debt is in legal effect a mortgage. (*Eaton* v. *Whiting*, 3 Pick. 484). A deed of trust is a conveyance made to a person other than the creditor with a power of sale, if the debt is not paid as agreed. Such a deed has all the essentials of a mortgage, being a conveyance of land as a security for a debt. It passes the legal title to the grantee, just as a mortgage does. Both instruments convey a defeasible title only; and the right to redeem is the same under either. The only important difference between them is, that in the one case the conveyance is directly to the creditor, while in the other it is to a third person for benefit of the creditor. So far as they bear upon the case before us, all the incidents and legal principles as to the effect of a mortgage apply with equal force to a trust-deed. Each is a form of security; and in practice in Virginia and in this State the latter has almost superceded the former. (*Taylor* v. *Stevens*, 18 Gratt. 224-278; *Pitzer* v. *Burns*, 7 W. Va. 63). In the large majority of the other States of the union mortgages are used almost exclusively. Thus it is that the doctrines relating to this kind of securities are by text-writers and courts generally classified and explained as mortgages; but, as before stated, the principles and rules governing mortgages are essentially the same and apply equally to trust-deeds executed to secure debts. These views are expressed by Judge Snyder in delivering the opinion of this Court in *Camden* v. *Alkire*, 24 W. Va. 674; and I have used his language above, as it is as applicable to this case as to the one then before the Court.

The authorities, to which 1 shall refer, are many of them cases, wherein the courts were dealing with mortgages, but the principles determined by these cases would have been deter-

mined necessarily in the same way, had the courts had before them such a deed of trust as we are dealing with in this case.

In the case before us no action would lie for the recovery at law on the note after September 22, 1851; for by the statute of limitations then in force five years would bar such action. But it is well settled both in Virginia and in this State, that the specific lien created by said deed of trust did not become extinguished then, nor was the equitable remedy for its enforcement then taken away, simply because the remedy by suit on the note became barred by the statute of limitations; for the doctrine in this State as well as in most of the other States of the Union is, that the statute of limitations bars the *remedy* but does not extinguish the debt, and therefore if the debt be secured by a deed of trust, though an action for its recovery be barred, the lien of the deed of trust or mortgage or other lien such as the vendor's lien continues and is not affected by any lapse of time short of the period sufficient to raise the presumption of payment. (*Hanna* v. *Wilson*, 3 Gratt. point 1 of syll. p. 232; *Pitzer* v. *Burns*, 7 W. Va., point 1 of syll. p. 63; *Camden* v. *Alkire*, 24 W. Va., point 5 of syll. p. 675; *Ross* v. *Norvell*, 1 Wash. 14; *Coles* v. *Withers*, 33 Gratt., point 4 of syll. p. 187; *Smith's Ex'r* v. *Washington City, Virginia Midland and Great Southern Railroad Campauy*, 33 Gratt., point 1 of syll. p. 617–620). These views are sustained by the great weight of authority. In the last cited case the following authorities are referred to as sustaining these views: *Elkins* v. *Edwards*, 8 Ga. 325–326; *Thayer* v. *Mann*, 19 Pick. 585; *Pratt* v. *Huggins*, 28 Barb. 277; *Borst* v. *Corey*, 15 N. Y. 505–510; *Belknap* v. *Gleason*, 11 Conn. 160; *Miller* v. *Trustees of Jefferson College*, 5 Sim. & Marsh. 651; *Trotter* v. *Erwin*, 27 Miss. 772; *Nevitt* v. *Bacon et als*, 32 Miss. 212; *Joy* v. *Adams*, 26 Me. 330; *Wiswell* v. *Baxter*, 20 Wis. 713; *Cook* v. *Culberton*, 9 Nev. 199.

It is true, that in some old English cases it was held, that, while a bond or note would after a certain time be presumed to be paid, yet, if it was secured by a mortgage, no length of time would operate against the mortgage. These decisions were based on the idea, that the legal estate was vested in the mortgagee, and the mortgager was regarded as a mere tenant at will, whose possession of the land was to be regarded

as the possession of the mortgagee (*Toplis* v. *Baker*, 2 Cox 118; *Leman* v. *Newhouse*, 1 Ves. Sr. 51). But this old doctrine has been repudiated in England for nearly a century, and never had any support in the decisions in America. (*Trask* v. *White*, 3 Bro. Ch'y 289; Sir Thomas Plumber in *Christopher* v. *Sparke*, 2 Jac. & W. 223; Justice Walter in *Harris* v. *Mills*, 28 Ill. 44). It may be regarded as settled, that the fact, that a debt is secured by a mortgage or deed of trust, does not place it on any different footing from a debt due by a bond without a mortgage or deed of trust; and a debt so secured is liable to be defeated by the same presumption arising from lapse of time and laches of the creditor. (*Pitzer's adm'r* v. *Burns*, 7 W. Va. 63 and 75–76). The old doctrine of the English causes could not be applied; for if a debt secured by a mortgage or deed of trust was not to be presumed to be paid after the same lapse of time, as a bond not so secured was presumed to be paid, if the fiction of a tenancy at will on the part of the mortgager or grantor in the deed of trust was insufficient to prevent such presumption, then such presumption never could arise even after any lapse of time however long; and deeds of trust and mortgages could still be enforced, though the debts secured by them had been paid off for a century, it being practically impossible to prove the payment of a debt a hundred years ago. Though the existence of the mortgage or deed of trust could be proven after any lapse of time, as they are recorded.

It follows therefore, that in the case before us the deed of trust executed by Andrew S. Criss to secure his note of $470.88 payable to Aaron Criss could be enforced by him, so long as the debt secured was unpaid, but that this debt would be presumed to be paid after a certain lapse of time, and this time is precisely the same, as would raise a presumption of payment of the debt, had it not been secured by the deed of trust. This time, in which a debt is presumed to be paid, is the same, whether the debt be evidenced by note or bond or by a judgment, and whether the debt be or be not secured by a deed of trust or mortgage. It is true, where a debt is secured by a mortgage or deed of trust, it has been held in some States, that the mortgage or deed of trust can not be enforced after the limitation of the right of entry on land by

the statute of limitations in the State, though such time may be different from and less than the time, in which such debt would be presumed to be paid, if it had not been secured by such deed of trust or mortgage. (*Jarvis* v. *Woodruff*, 22 Conn. 548; *Dawson* v. *Hoyle*, 58 Ala. 44). But in other States and in Virginia and in this State this rule is not followed; and the presumption of the payment of a debt is in all cases the same, whether the debt be or be not secured by a deed of trust or mortgage, or whether it be evidenced by a bond, notes or judgment. And such lien may be enforced in a court of equity, till such presumption arises, though the debt be barred at law by the statute of limitations, or though the right of entry on the land, on which the debt is a lien, be also barred at law by the statute of limitations. The Virginia and West Virginia decisions are sustained by the weight of authority in other States. (*Union Bank of Louisiana* v. *Stafford*, 12 How. (U. S.) 327, 340, 351; *Thayer* v. *Mann*, 19 Pick. 535; *Henry* v. *Confidence Gold and Silver Manufacturing Company*, 1 Nev. 619; *Cleveland* v. *Harrison*, 15 Wis. 670; *Wilkinson* v. *Flowers*, 37 Miss. 579; *Waltemin* v. *Westover*, 19 N. Y. 16–20; *Ohio Life Insurance and Trust Company* v. *Winn*, 4 M'd. Ch'y Dec. 253; *Elkins* v. *Edwards*, 9 Ga. 326; *Wood* v. *Augustine, Sr. et al.*, 61 Mo. 46, pt. 4 of syll.; *Barned* v. *Barned*, 21 N. J. Eq. 245; *Wanmaker's Executor* v. *Van Buskirk*, Saxt. 685; *Howland* v. *Shurtleff*, 2 Met. (Miss.) 26; *Howard* v. *Hilldreth*, 18 N. H. 105).

But without relying on the decisions elsewhere the decisions, which have been rendered in Virginia and West Virginia, conclusively settle the law in this State to be as we have stated it above. The law was in fact so settled in Virginia in a case decided in 1791, one of the oldest cases reported in the Virginia Reports. *Ross* v. *Norvell*, 1 Wash. 14, was a case, in which certain slaves were mortgaged to secure a debt. The mortgager filed his bill to redeem these slaves. The mortgage was given in the year 1765, and the bill to reclaim the negroes was not filed till 1779. It was contended by the mortgagee, who had the possession of the negroes, that a court of equity would not admit the redemption of lands, where the mortgagee had possession, because, as the counsel for the mortgagee contended, after twenty years the entry on

land is taken away and an action of ejectment is barred by statute of limitations; and it was agreed, if this principle is to be followed, the redemption of the mortgaged slaves ought to be refused after five years, that being the length of time, within which by the statute of limitations an action of *detinue* or *trover* for slaves must be brought. But the court held, that the mortgager might redeem his slaves, though the mortgagee had held possession of them more than five years; that the limitation of twenty years, after which generally a court of equity would not permit the mortgager to redeem lands, which had been in the possession of the mortgagee, was fixed by the courts, not because after twenty years the right of entry was taken away, and an action of ejectment barred by the statute of limitations, but because after twenty years a debt, no matter how evidenced whether by note, bond or judgment, was presumed to be paid, and so after the lapse of twenty years the right to redeem the land ought to be presumed to have been abandoned by the mortgager, when the mortgagee was in possession. And this being the reason of this rule, the same time of twenty years ought to be allowed, before a debt is presumed to be paid, or the right of the mortgager to redeem be presumed to be abandoned, where the mortgagee was in possession, where the property mortgaged was slaves or other personal property, though the right to recover such personal property in an action at law which the statute of limitations limited to five years. The statute of limitations does not bar either the enforcement of the mortgage and the collection of the debt in that manner or the right of the mortgager to redeem, these being proceedings in a court of equity to enforce rights, to which no limitation was fixed by any statute of limitations, and because the twenty years fixed on by the courts as raising a presumption either of the payment of the debt or of the abandonment of the right to redeem does not like a statute of limitations produce an absolute bar but raises a presumption, which may be rebutted by certain circumstances, which, a court of equity holds, justify the extension of the time, within which such equitable rights may be enforced.

These views have ever since 1791 been acted upon by the courts both of Virginia and West Virginia; and of course

they could not now be disregarded by us, even if the great weight of authority in the other States and in England were opposed to them. But in truth the great weight of authority both in England and in the States of the Union accords with these views. The Virginia and West Virginia cases, which have followed these views, are *Hanna* v. *Wilson*, 3 Gratt. 243 ; *Cole* v. *Withers*, 33 Gratt. 186 ; *Smith's executors* v. *Washington City, Virginia Midland and Great Southern Railroad Company*, 33 Gratt. 617 ; *Pitzer* v. *Burns*, 7 W. Va. 63 ; *Camden* v. *Alkire*, 24 W. Va. 674.

It will be observed, that in these cases, wherever any time is named as sufficient to raise the presumption of the payment of a debt, twenty years is constantly the time named. In truth this period has long been fixed upon by the courts as the proper time, in which this presumption of payment as well as many other presumptions are raised. Thus in *Rex* v. *Joliffe*, 2 B. & C. 54, (9 Eng. Com. L. R). Lord Tenterden said : "A regular usage for twenty years not explained or contradicted is that, upon which many private and public rights are held, there being nothing in the usage to contravene the public policy." In that case a title to an office by presumption was considered as established, when the custom was proven to have existed for twenty years, there being no evidence to contradict the existence of such custom at any time, it being presumed, that such custom had existed from time immemorial from this uncontradicted proof of its existence for the last twenty years and no proof that it did not exist at any time prior to this twenty years. It has in like manner been long settled, that, when the payment of a debt though evidenced by a bond or other specialty was not demanded for twenty years, and there was no payment of interest or other circumstances to show that the debt was still in existence and force, payment of such debt or release of such specialty ought to be presumed by a jury (*Oswald* v. *Leight*, 17 Tenn. 271). Lord Ellenborough in *Colsell* v. *Budd*, 1 Camp. 27, thus lays down the law : "After the lapse of twenty years a bond will be presumed to be satisfied ; but there must be either a lapse of twenty years or a less time coupled with some circumstances to strengthen the presumption."

This doctrine of presumption not only of payment but of surrender or of release or of prescription and other presumptions after a lapse of twenty years was adopted by the courts by analogy to the right of entry or right to bring an action of ejectment at law under the old statute of limitations (21 Jac. I. c. 15—Lord Mansfield in Doe d. *Brandon* v· *Calvert*, 5 Taunt. 170, 1 Eng. Com. Law R.); *Camden* v. *Alkire* 24 W. Va. pt. 1 of syll. p. 674). I understand by analogy as used in these cases not any special resemblance between a right of entry or a right to bring an action of ejectment and a right to collect a debt or a right to claim an office by immemorial custom or cases, where twenty years has been laid down as the lapse of time necessary to raise a presumption ; for really there is no more resemblance in most of these cases, if not in all of them, to the right to bring an action of ejectment than to the right to bring a writ of right, which for a long time by statute was permitted to be brought, long after the right of entry or action of ejectment was barred. All that is properly meant by analogy in saying that these presumptions were based on analogy to the time, within which an action of ejectment must by the statute of limitations be brought, is that the courts felt themselves bound after a great lapse of time to raise these presumptions, and the legislature having named no length of time, in which they should be raised, the courts fixed upon twenty years, because they thought, that time was a reasonable time, in which to raise such presumption, and they regarded it as less arbitrary to fix on twenty years the bar to an action of ejectment than on nineteen years for instance, which if fixed on, they would have had to do so arbitrarily; and in selecting the twenty years, the bar to our action of ejectment, rather than the fifty or more years, which was the bar to a writ of right, the courts must have been influenced not by a greater analogy to the action of ejectment than to the writ of right, but simply that they deemed twenty years a more reasonable time for the purpose than fifty or more years. As illustrating my views I would refer to the remarks of the President in delivering the opinion of the Court in *Ross* v. *Norvell*, 1 Wash. 18 (to page 24).

"As to lands twenty years possession takes away the en-

try and of course bars an ejectment. But what then? It does not bar other remedies to recover land, as longer periods are allowed to commence various writs of right. It seems therefore this is not the true ground upon which to adopt the rule that such presumptions are raised by a lapse of twenty years. A more correct principle would seem to be, that before twenty years a dereliction of the right to redeem ought to be presumed, as a debt due by bond or even a judgment, is presumed paid, if that length of time has elapsed without payment of interest or some acknowledgement which may repeal the presumption. If this be the proper principle, it extends as well to slaves as to lands. And the court of chancery adopted that as the rule in the case of *Ross* v. *Dod* (not reported) and allowed a redemption of slaves after five, but within twenty years."

And so we have not reduced the twenty years as the time, within which arises a presumption of payment, though the time, in which an action of ejectment can be brought, is now with us reduced to ten years. (*Camden* v. *Alkire*, 24 W. Va. 674, points one and two of syllabus). We think instead of saying, that the time, which is necessary to elapse in order to raise a presumption of payments and numerous other presumptions, is adopted and fixed at twenty years by analogy to the old statute of limitations of an action of ejectment, it would be more proper to say, that the twenty years necessary to raise such presumptions was originally suggested to courts of equity by this old statute of limitations of actions of ejectment, the courts of equity regarding the time named in this statute as a more suitable time after the lapse of which to raise such presumption than the time named as the limitation by statute on any other action real or personal.

We will now consider the nature of these presumptions and especially of this presumption of the payment of a debt after the lapse of twenty years. As stated in the third point of the syllabus in *Camden* v. *Alkire*, 24 W. Va. 675, this presumption is but an equitable rule, and it may be varied and made to operate at a longer or shorter period depending upon circumstances and the relation of the parties. But as I understand, though there be a discretion in a particular case, whether this period of twenty years shall be lengthened or

shortened according to the particular circumstances of the case, yet this discretion is not arbitrary but must be governed by what has been held under the same or like circumstances in the decided cases. Thus if the interest on the debt is paid or a part of the principal is paid within the last twenty years, that fact will effectually repel the presumption of payment after a lapse of more than twenty years since the debt became due (See *Emory* v. *Keighan*, 88 Ill. 482; *Rodham* v. *Morley*, 1 De G. & J. 1; *Harrington* v. *Slade*, 22 Barb. 161; *Schmucker* v. *Sibert*, 18 Kan. 104). In calculating, whether the twenty years had elapsed necessary to raise the presumption of payment, it is settled, that, if during a portion of the time for any reason an action could not have been brought to enforce this debt, this time must not be counted; for no presumption of payment would properly arise during the time, however long it might continue, in which the creditor could not sue upon his debt by reason of the country, in which he lived, being at war with the country, in which the debtor resided, or by reason of the closing of the courts from the existence of war or for any other reason. Such time is abated, even when the question is, whether an action is barred by the statute of limitations, and of course it must in justice be abated, when the question is, whether a debt is to be presumed to be paid because of the lapse of time, since it was due and payable (*Hale* v. *Pack*, 10 W. Va., point 3 of syll. p. 145; *Jackson* v. *Pierce*, 10 Johns. 413).

In this last cited West Virginia case it is said by Green, judge, p. 151-2: "This presumption of payment is not a legal presumption absolutely conclusive, but it is a presumption of fact, which, though not conclusive, is yet *prima facie* proof of payment. If less than twenty years, though nearly that time, has elapsed, all the circumstances considered, including lapse of time, and their natural weight as evidence is to be given each circumstance, including lapse of time, but if twenty years has elapsed, a legal presumption arises, which must be accepted as proof, unless contrary appears by evidence. But the presumption may be rebutted by proof which is satisfactory that the debt has not been paid, such as proof of the payment of interest within twenty years, the continued absence from the counrty by the obligee, the continued

insolvency of the defendant or obligor, or other strong cir-
cumstances showing non-payment or good cause for longer
forbearance. (See *Searle* v. *Lord Bennington*, 2 Str. R. 826 ;
*Newman* v. *Newman*, 1 Starkie 101 ; *Giles* v. *Barmon et al.*, 5
John. ch. R. 545 ; *Mercer* v. *Stevens Coxe*, N. J. 433 ; *Hen-
derson* v. *Lewis*, 9 Serg. & R. 379 *Cope* v. *Humphreys*, 14
Serg. & R. 15 ; *Eustace* v. *Gusher, Ex'or of Eustace*, 1 Wash.
188)."

Do sufficient circumstances exist in this case to repel the
presumption of payment? I think not. The note was
drawn payable in one year after date. It was given upon the set-
tlement of accounts between two brothers. These brothers,
we may reasonably infer from the record, continued to live
in the same county for somewhat more than twenty years,
after the note was given. The note bore interest from the
day it was given and was secured by a deed of trust on the
interest of the maker in the real estate he had inherited from
his father and apparently on all the household furniture and
other personal property of the maker, the whole of which both
real and personal not being originally much if any more than
sufficient to secure the note. Indeed, if no part of the amount
due was paid, this property real and personal would not,
when the real estate was sold in this suit, pay one third of
this note and the interest thereon. After the lapse of some-
what more than twenty years, after this note and deed of
trust was given, the inference, from what is proven in this
suit, is, that the payee removed from Harrison county, West
Virginia,, where he and the maker of the note had thereto-
fore lived, to Baltimore, Maryland, and the maker of the note
continued to reside in Harrison county, where he still resides.

These circumstances have a very slight tendency, if any,
to repel the presumption of payment, which is very strong
in this case, as nearly thirty years elapsed, after this note be-
came due, before its payment was demanded by the payee in
this suit. It is true, that after some fifteen years had elapsed,
a war broke out, in which some portion of the people of
Harrison county were engaged. Of this fact this Court will
take judicial notice; but it will also take judicial notice, that
the county of Harrison, in which both the maker and the
payee of this note resided, was far removed from the active

operations carried on by armies during the war; and there is no evidence or reason to believe, from what appears in the this record, that either the payee or the maker were ever actively engaged in the war, or that the courts in Harrison county were closed at any time during the war, or that the war was any obstacle in the way of the payee's enforcing the payment of this note during the continuance of the war. So it follows, that no time is to be abated because of this war, when we are considering, whether a sufficient time has elapsed in this case to raise the presumption of payment. Nor is any time to be abated because in 1866 after the close of the war the payee, as we infer from the record, removed to Baltimore, Maryland, to live, where he has since resided. As was said in *Hale et al.* v. *Pack's Executor's*, 10 W. Va. Va. 152, the continued absence from the country of the maker would be a circumstance, which would be entitled to much weight in repelling the presumption of payment arising from lapse of time; but the fact, that the payee of the note has removed to another country or State would not, it seems to me, even tend to repel the presumption of payment. For so far from being a good cause for the non-enforcement of a debt, such removal by the payee would ordinarily be a good cause or at least an occasion for collecting such debt as well as all other debts due the payee in the country or State, from which he was about to remove permanently. It is not pretended, that the presumption of the payment of this debt arising from a lapse of nearly thirty years is repelled by the payment of interest on this debt at any time within these thirty years; nor is there any proof that the maker of the note has continued during this or during any part of this time insolvent.

If it had been shown, that during more than ten years of these thirty years the maker of this note was notoriously insolvent, this would have been a circumstance, which would show a good cause for not instituting a suit on the note; but even this would have been no reason, why the payee should not have foreclosed his deed of trust. On the contrary it would ordinarily be a reason why the payee should foreclose his deed of trust. Though, as the payee was a brother of the maker of the note, the insolvency of the

note maker might have operated on a brother as a reason for forbearing to order the sale by the trustee under the deed of trust. But this insolvency is not shown. We might perhaps infer, that, when this note was given in 1845, the maker had probably no property, except what he gave the lien on with which to pay this note. But what was his pecuniary condition during the thirty years, which elapsed after the giving of this note, in no manner appears. There is nothing in the record to indicate, that he was not during the greater part of this time able without embarrassing himself to pay the note. Nor is there anything on the record to show, that the payee was not in as needy circumstances as the maker. The pecuniary condition of both of the brothers is undisclosed by the record; and no inference could be properly drawn from the pecuniary condition of either of them to repel the presumption of the payment arising from the lapse of thirty years. For all we can tell for most of these thirty years the payee of this note has been in a worse pecuniary condition than the maker. It is true, if I was to make a guess, I would guess, that the maker of the note during these thirty years was probably a poorer man than his brother the payee; but in so guessing I could not but feel, that it was a mere guess based on almost no grounds, and that the very reverse might well be the truth.

There being then no circumstances disclosed by this record, which even tend to rebut the presumption of the payment of this note, which is produced by the lapse of thirty years, and which, as the time greatly exceeds the time, in which such presumption arises, that is, twenty years, this presumption is in this case a strong presumption. Under the circumstances disclosed the presumption of payment in this case is so strong, that the proof, that the debt has not been paid, ought to be free from all reasonable doubt, and in its character entirely satisfactory. What is the proof? Nothing whatever but the positive statement by the payee in his deposition " that not one dollar of this debt has ever been paid." The payee under our statute was a competent witness. And I am disposed to give to his evidence because of the manner, in which he has testified, all the weight, which I could give it, were he a disinterested witness instead of being, as he is, an interested wit-

ness. His deposition was however given more than thirty years, after this note had been given to him, and nearly thirty years after it became due. And though he testifies positively, that not " one dollar of this note has ever been paid," yet after such a lapse of time this positive statement can carry with it no more weight than if he had said : " I have no recollection of ever having been paid a dollar on this note ; and I do not believe I ever was." But may it not well be, that the whole of this note has been paid off a quarter of a century before, and he still have not the least recollection of such payment? May not these brothers have well had numerous business transactions together after this note became due? Is there anything in the record to indicate, that they did not? Not a word. On the contrary it would seem to be most probable, that they did have these business transactions together.

The deed of trust given to secure this note in 1845 shows on its face, that it was given on a settlement of accounts between the brothers, and it was for $470.88. This would seem to indicate that prior to 1845 these brothers did have considerable business transactions together; and there is no reason to believe, that their business relations were not continued, as both brothers continued to reside in Harrison county for more than twenty years thereafter. May not this note have been settled between these brothers some time subsequent to 1846 in some settlement or business transaction? And may not the payment in some such settlement or business transaction have received a credit by the amount of this note or by a part of it in one settlement or business transaction and by the balance of it in some other settlement or business transaction? If this had occurred, is it at all probable, that it would be recollected after a quarter of a century, and when the payee, who testifies, is sixty five years old ? To my mind it seems not at all improbable, that, if this note was settled in this manner, the payee would after the lapse of a quarter of a century entirely forget, that it was so settled, and could truthfully say that he did not recollect and did not believe that one cent had been paid on the note. Such a statement under such circumstances can not overthrow the strong presumption of the payment in some manner of this note, which arises from the fact, that thirty years have elapsed

since it was due, and no demand during all that time is shown to have been made for its payment. If the testimony of the payee alone is to overthrow this strong presumption, such evidence of the payee must be shown to be in a high degree probable by being supported by the surrounding circumstances. But in the case before us this evidence of the payee is entirely unsupported, unless we regard the failure of the maker of the note to testify in his own behalf as corroborating the payee's oath that no part of this note had been paid.

Ordinarily, where one party to a suit testifies in his own behalf, and the party, against whom he testifies, must from the nature of the case have a personal knowledge of the fact, to which his opponent has testified, but fails to give his evidence, such failure would be regarded as a corroboration of his opponent's statements. For if such statement were not true, ordinarily it would be contradicted by the other side. But the failure of the maker to testify in this case is entitled to but little weight as corroborating the statement of the payee that no part of the note had ever been paid. The maker might verily believe, that he did not owe one cent on the note, and yet, as after a lapse of a quarter of a century he would very probably have forgotten, how the note had been settled or satisfied, or why he was under the belief, that he owed nothing upon it; he may have well declined to testify in his own behalf, as such evidence, as he could truthfully give, would be of a very unsatisfactory character. And he may well have been advised in this case, that the the testimony of the payee would under the circumstances be regarded as insufficient to enable him after the lapse of twenty years to enforce the payment of this note, no reason whatever having been proven, why the payment of this note had not been long before enforced.

I am therefore of the opinion, that the strong presumption, that this note was paid, arising from the lapse of thirty years without any proof to show, why it had not been before enforced, is rather confirmed than rebutted by the circumstances in this case, and that such presumption has not been overthrown by the testimony of the payee, wherein he simply denies, that a dollar of this debt has been paid, but states no

reasons, why he has not collected it, and why he has failed to demand its payment by taking legal steps sooner, and does not pretend to state any circumstances surrounding the case, which would induce the belief, that he could not have forgotten important facts after such a great lapse of time.

It remains now to inquire, whether there is anything in the pleadings in this cause, which forbid our pronouncing judgment on the question, we have been considering, according to its real merits.   In determining this question we must attend specially to the agreement of the parties set forth in the decree appealed from, which has been copied at length in the statement of the case.   It is as follows : "It is hereby agreed by said Aaron and Andrew S. Criss that the answer of said Aaron Criss shall be treated as a cross-bill as to the matters contained therein and the answer of said Andrew S. as an answer to said answer treated as a cross-bill and the matters in said answers shall be heard as if upon cross-bill answer thereto and general replication."   The said decree shows that the cause was so heard upon the deposition of Aaron Criss, on former decrees and papers in the cause, and on said deed of trust.   This answer of Aaron Criss thus treated as a cross-bill simply sets up, that his brother, Andrew S. Criss, owed him a note executed on a settlement of accounts, which note was payable nearly thirty years before the filing of this cross-bill, but no part of which had been paid ; that this note was secured by a deed of trust on the real estate, which the court in this cause had caused to be sold, and the proceeds of which sale in fact belonged to Andrew S. Criss and ought to be applied, so far as his interest in these proceeds went, to the payment of this debt, and asks that the court decree, that Andrew S. Criss's portion of the proceeds of said sale be so applied.

The answer of Andrew S. Criss to this cross-bill admits the execution of this note and deed of trust; but in the language of this answer "he utterly denies, that he is indebted to Aaron Criss one cent on said deed of trust."   It is true, that the answer does not, except by the implication from the above statement, allege, that this debt has been paid; and it is also true, that there are some statements in this answer of Andrew S. Criss set out at length in the statement of this

case, from which taken by themselves an inference might be drawn, that this debt had never been paid by Andrew S. Criss. For instance in a parenthesis in said answer it is said, that this debt was not originally a valid debt, from which the natural inference would be, that it was not subsequently paid; but on reading this answer it will be seen, that it was not the purpose of the answer to make any issue on the existence of this debt originally as alleged in the cross-bill, but rather to insist that, if originally this debt was a valid one, it could not now be enforced because of the great lapse of time, since it became due. And again in another part of this answer as a fact showing that the defendant, Andrew S. Criss, is not indebted to said Aaron Criss one cent on this debt he asserts, that said Aaron has never made a demand for this debt. This would tend to show, that this debt was unpaid, rather than that it had been paid. However it is rather an unsound argument inserted in the answer than an allegation inconsistent with the payment of the debt.

The court below evidently considered that the real issue, the point in dispute, between the parties, which they intended to submit to it for decision without leaving it to be controlled by the manner of its presentation in the pleadings was, whether the deed of trust was *then*, when this decree was entered, a lien upon the interest of Andrew S. Criss in the land, which had been sold in this cause by a commissioner of the court, and the proceeds of which were still under the control of the court. This appears plainly on the face of of the decree, which says: "The court is of opinion and doth adjudge, order and decree, that the deed of trust executed by Andrew S. Criss as aforesaid dated September 22, 1845, is a lien upon one undivided twelfth part of the tract of land containing forty three acres, mentioned and described in the bill and proceedings of this cause, as well as upon the undivided twelfth part of the two lots in Clarksburg, mentioned in said bill and proceedings, and that the said Aaron is entitled to the one undivided twelfth part of the proceeds of said land and lots after deducting costs as hereinbefore directed, that said Andrew S. would have been entitled to, but for the lien of said deed of trust. And it is further ordered that the said

one-twelfth part of such proceeds be paid by John Bassel the commissioner who sold said lots and lands, to the said Aaron Criss, and that he pay the residue of the interest of the said Andrew S. Criss in said lands and lots to him, said Andrew S. Criss."

We think that under the consent agreement in reference to the pleadings contained in this decree the court did not err in considering, that the question fairly submitted to it. for decision by the consent of parties was, whether this deed of trust was *then* a lien on the interest of Andrew S. Criss in his father's real estate; but for the reasons heretofore given we think, the court below decided this issue wrong, because the debt secured by this deed of trust should under the circumstances developed in the cause have been presumed to be paid, and this deed of trust thereby discharged and no longer a lien upon the interests of Andrew S. Criss in the real estate, which descended to him from his father, or on the proceeds of such real estate; and that the court erred in directing these proceeds or any part thereof of this real estate, which was under the control of the court, and which belonged to Andrew S. Criss, to be paid to Aaron Criss on this debt or deed of trust. From what we have said it is obvious, that Andrew S. Criss, when he filed his answer misapprehended his legal rights, and that the claim set up against him was not barred by the statute of limitations, as he supposed, and as his counsel in his argument before this Court still insists. It is also obvious, that the said Andrew S. Criss did originally owe this debt secured by this deed of trust; and though a sort of denial, that this debt was originally a valid debt, appears in the answer, yet this *quasi* denial was made obviously from a misapprehension of his legal rights by Andrew S. Criss, when he filed his answer, and that in point of fact he did not dispute the original validity of this debt or deed of trust, and accordingly he did not testify as to the original validity or invalidity of this debt, nor did he introduce any evidence, which tended to show, that this debt was originally invalid. It would have taken exceedingly strong evidence to induce any court to decide, that a deed of trust and note were originally invalid, when no allegation of the kind had been made by the maker of

such note and deed of trust for more than thirty years, after they were admittedly executed.

But, as we have said, the original validity of this debt and deed of trust was not the matter intended by the parties to be submitted to the court for decision. It was, whether the debt and deed of trust were *still* valid and could be enforced. The proper way of raising this issue was, when the cross-bill was filed, simply to plead payment, or to simply assert in the answer, that the debt had been paid in full, and that this was sufficiently shown by the lapse of nearly thirty years since the debt became due. But though much confusion has been produced by this answer of Andrew S. Criss being so imperfect, still for the reasons, we have given, I do not think, that the court erred in considering the real question at issue upon its merits, though it did err in the conclusion, which it reached on the merits of the case.

I am therefore of the opinion, that the circuit court of Harrison county erred in the decree appealed from, and that this decree must be reversed, set aside and annulled; and that this cause be remanded to the circuit court of Harrison county with instructions to proceed with this cause and to have distributed the proceeds of the real estate sold in this cause, just as though this deed of trust of September 2, 1845, had never been given, this Court being of opinion, that it satisfactorily appears, that the debt secured by this deed of trust has been paid in full.

REVERSED.   REMANDED.