ELIZABETH KNIGHT McCLINTIC, *Executrix, etc. v.* THE
DUNBAR LAND COMPANY *et al.*

(CC 695)

Submitted January 10, 1945. Decided January 30, 1945.

*Campbell, McClintic & James* and *Lee M. Kenna,* for
plaintiff.

*Watts, Poffenbarger & Bowles* and *Roy S. Samms, Jr.,*
for defendants.

FOX, JUDGE:

On November 26, 1919, The Dunbar Land Company
conveyed to A. G. Skeen a lot in Dunbar, West Virginia,
and on the face of its deed reserved a vendor's lien on the
property conveyed to secure the payment of $1,750.00, of
purchase money, for which Skeen executed six notes, five

for the sum of $300.00 each, and one for the sum of $250.00, the five notes aforesaid being payable in one, two, three, four and five years, and the $250.00 note in six years, all bearing interest from date, and all made negotiable and payable to The Dunbar Land Company, at the Bank of Dunbar, of Dunbar, West Virginia. The notes payable in one, two, three and four years were indorsed and transferred by The Dunbar Land Company to J. G. Farquar, and by him to George W. McClintic. The record does not disclose what became of the notes due in five and six years.

The plaintiff, as executrix of the estate of George W. McClintic, instituted this suit late in the year 1943, and filed her bill of complaint at November rules, 1943. In her suit she named as parties defendant The Dunbar Land Company, its receiver, A. G. Skeen, and others to whom the real estate in question was transferred from time to time. In her bill she avers the conveyance aforesaid to Skeen, and the reservation of a vendor's lien on the face thereof, and the non-payment of the notes owned by her decedent; also that by subsequent deeds the lot covered by the lien was conveyed, first, by A. G. Skeen to C. W. Meadows on April 20, 1920; second, by C. W. Meadows to H. S. Meadows on October 11, 1920; third, by H. S. Meadows to J. K. Wiles and Hazel M. Wiles, his wife, on June 11, 1937; and, fourth, by J. K. Wiles, widower, and Ivan V. Wiles to Betty Jeane Wiles on December 30, 1940. Further, that on November 27, 1925, The Dunbar Land Company executed a release of the vendor's lien retained in its deed to Skeen, dated November 26, 1919, which was one day after the six-year note aforesaid had become due and payable, and stating in said release that "the indebtedness secured thereby having been fully paid and satisfied." Needless to say, this release is not binding on the plaintiff. From the deeds filed as exhibits with the bill, it appears that C. W. Meadows and H. S. Meadows, grantees aforesaid, assumed the payment of the notes secured by the vendor's lien aforesaid; but said lien is not specifically mentioned in any of the subsequent deeds conveying the lot, although in the deed to Betty Jeane Wiles, she assumes, in general

terms, the payment of all encumbrances, liens and indebt-
edness. The bill also avers that on November 26, 1921,
H. S. Meadows, who was then the owner of the lot bound
by said lien, deposited with the Bank of Dunbar the sum of
$336.00, "To pay note of A. G. Skeen to Dunbar Land Co.
for $300.00 and interest 2 years"; that on November 24,
1922, the sum of $354.00 was deposited by H. S. Meadows
to the same account; and that on August 31, 1923, the sum
of $372.00 was deposited to the same account.

There is no allegation in the bill that the deposits so
made were to be applied upon the particular notes falling
due at the time or subsequent to any such deposit, and it is
averred therein that The Dunbar Land Company on No-
vember 28, 1921, notified J. G. Farquar, who it evidently
understood was then the owner of the one-year note, that
it had probably been provided for by a deposit in the
Bank of Dunbar at the date of its maturity, but it appears
from the bill that the records of the Bank of Dunbar do
not disclose any such deposit. It is clear, therefore, that
while on the face of the bill it is averred that three de-
posits were made in the Bank of Dunbar, it is not clear
that a fourth deposit, which would have provided for the
other of the four notes owned by McClintic, has been
made, and in this aspect of the case, and for reasons which
will hereinafter appear, it will become highly important to
determine, on the development of the case, whether more
than three deposits were made in said bank, and, if only
three deposits were made, on what notes they should be
applied, for the particular reason that it is obvious that
if only three deposits were made and those so made
should, under legal rules or otherwise, be applied on the
notes first becoming due, then the fourth and last note
falling due in four years from its date remains unpaid.
Of course, we express no opinion on this phase of the case.

Paragraphs 2 and 3 of the prayer of the bill are as
follows:

"2. That the Bank of Dunbar be ordered to pay
over to plaintiff the sum of One Thousand and
Sixty-two Dollars ($1,062.00) now held in trust by

it to pay the said three notes which became due in 1, 2 and 3 years after date respectively, and also to pay over to plaintiff any other sum of money which may have been deposited with said Bank to pay the said note which became due in 4 years after date.

"3. That if the Court finds that no amount was deposited with said Bank to pay the said note which became due in 4 years after date, the said purported release of said vendor's lien executed by the Dunbar Land Company be set aside and declared null and void and of no effect and a decree may be entered for the sale of said land to pay off and discharge said note which became due in 4 years after date and the interest thereon, and the costs of this suit; * * *";

and for general relief.

Betty Jeane Wiles, an infant, appeared by guardian *ad litem* appointed for her, and the guardian *ad litem* in his own name, and her legal guardian, filed their demurrer to the bill, and for grounds thereof state, "* * * the said bill of complaint shows that the Statute of Limitations bars a recovery against the said defendant, Betty Jeane Wiles, upon the first, second and third notes, as alleged by the said plaintiff, in that this suit was instituted more than twenty years after the date upon which the said notes became due and payable."

It is, of course, obvious that the first, second and third notes aforesaid became due more than twenty years prior to the date of the institution of this suit; and that the note due in four years did not become due until after that date. Therefore, it may be that on a final hearing of the case, should it be held that the note due in four years remains unpaid, the demurrer so interposed would have no force and effect, because limited on its face to the notes due in one, two and three years. This has raised the question whether the presentation of the constitutional question involved in the enactment of the so-called statute of limitations is not premature. Inasmuch, however, as the important question of whether the statute relied upon bars

458

any suit on the notes mentioned in the demurrer is raised, we have concluded to pass upon it as the sole question presented on this certification, which grows out of the interpretation to be given to Chapter 65, Acts of the Legislature, 1921, carried into Code, 1931, Chapter 55, Article 2, Section 5. The Act of 1921 reads as follows:

"That no lien, reserved on the face of any conveyance of real estate, or lien created by any deed of trust or mortgage on real estate, shall be valid or binding as a lien on such real estate, after the expiration of twenty years from the date on which the debt or obligation secured thereby becomes due; and the provisions of this act shall apply, with like effect, to every such lien now existing, as well as to every such lien hereafter reserved or created. *Provided, however,* that the said limitation of twenty years prescribed by this act shall not be so construed as to apply to any suit, now pending and undetermined, or to any suit or lawful proceeding, commenced within two years from the time when this act shall go into effect, for the enforcement of any such lien, otherwise legally enforceable but for said limitation.

"All acts and parts of acts, inconsistent herewith, are hereby repealed."

As carried into Code, 55-2-5, it reads:

"No lien reserved on the face of any conveyance of real estate, or lien created by any trust deed or mortgage on real estate, shall be valid or binding as a lien on such real estate, after the expiration of twenty years from the date on which the original debt or obligation secured thereby becomes due, unless suit to enforce the same shall have been instituted prior to the expiration of such period; and no extension of the original time of payment of such debt or obligation, or renewal of any note or other evidence of indebtedness secured by such lien, or provision for such extension or renewal in such conveyance, trust deed or mortgage, shall operate to extend the limitation of twenty years hereinbefore provided. The provisions of this section shall apply, with like effect, to every such lien now existing, as well as to

every such lien hereafter reserved or created: Provided, however, That such limitation of twenty years prescribed by this section shall not be so construed as to comply to any suit or proceeding. now pending and undetermined, commenced prior to the twenty-sixth day of July, nineteen hundred and twenty-three, for the enforcement of any such lien, otherwise legally enforceable but for said limitation."

As the law was before the enactment of the 1921 statute, no statute of limitations ran against a lien secured on the face of a conveyance of real estate, or against a lien created by mortgage or deed of trust on real estate; but such a lien was presumed to be discharged on the expiration of twenty years from the date when the right to enforce the same accrued. *Camden* v. *Alkire*, 24 W. Va. 675; *Criss* v. *Criss*, 28 W. Va. 388. This presumption could be rebutted by showing that the obligation secured by the lien had not been paid. The statute of 1921 was obviously intended to change the rule of law theretofore applicable to such liens, and prevent their enforcement, even though it should be made to appear that the money secured thereby had not been paid; but in doing so, it did not follow the usual form of a statute of limitations which, as a general rule, provides that no action shall be brought after the expiration of a given period, but enacted that no such lien "shall be valid or binding as a lien on such real estate after the expiration of twenty years from the date on which the debt or obligation secured thereby becomes due", and made the same applicable to existing liens, as well as to those thereafter reserved or created. Code, 1931, makes the same general provision, and further provides that there can be no extension of the time of payment of such original debt or obligation, or any renewal or other recognition of the indebtedness secured by such lien, or provision for its extension or renewal, even in the conveyance, trust deed, or mortgage by which created, the clear meaning of which is that in no possible way could the life of a lien be extended, even by a contract between the parties. There being no question of any extension or renewal of the

original obligations in the case at bar, the provision last referred to has no bearing on the question here at issue, other than as indicating the extent to which the Legislature has gone in prohibiting the enforcement of liens more than twenty years old, and as bearing on the question whether the statutes as enacted go beyond the procedural limitation of right, and destroy the right itself. The title of the Act of 1921 reads, "An act relating to liens, reserved on the faces of conveyances of real estate, or created by deeds of trust or mortgages thereon, and fixing limitations as to the period of time within which the same may be enforced."; and Code, 55-2-5, is under the general heading, "Limitation of actions and suits." It is apparent, we think, that as to the 1921 Act, the legislative intent was to use the statute to prevent enforcement by any means of the liens therein referred to. This intent is not so clearly apparent when we consider Code, 55-2-5, for there the limitation is, in a sense, confined to actions and suits. This distinction was made use of in *LeSage* v. *Switzer*, 116 W. Va. 657, 182 S. E. 797, where it was held that the Act of 1921, as amended by and reenacted by Code, 55-2-5, was unconstitutional as to a debt or obligation secured by a deed of trust, on the basic ground that the enforcement of a deed of trust did not require a suit or action in court, and that limitation of suits and actions could only be applied to situations requiring court proceedings for their settlement. There was left open, however, the question of what rule should be applied where, as in the case of a creditors' suit, the trustee and beneficiary being made parties are required to submit their rights to the court in such suit, as well as the question of whether the holding could be applied to mortgages or other liens, including deeds of trust, where in some circumstances court action for their enforcement is necessary. This, we think, leaves the law in a rather unsatisfactory state, although the decision in question, limited as it was to trust deeds, is sound. We prefer to decide the question here raised on other and broader grounds, namely, whether the statutes in question, making a lien created by private contract in-

valid, do not impair the terms and effect of a contract, and, as to contracts executed prior to the effective date of the 1921 statute, void under the provisions of Article I, Section 10 of the Constitution of the United States, and Article III, Section 4 of the Constitution of this State.

There is, of course, no question as to the constitutionality of the acts, in so far as they apply to contracts entered into subsequent to the effective date of the Act of 1921. It is unnecessary to cite the numerous authorities which uphold the right of the Legislature to limit proceedings in the courts of the State, and perhaps the enforcement of liens not requiring a proceeding in court therefor, where intended to act prospectively. The settling of titles to land, the ending of disputes, and other considerations affecting the public welfare and the peace and repose of society, might be mentioned in support of such legislation. It may be said that freedom of contract is involved; but the right to make contracts is always subject to the reasonable control of the Legislature when opposed to public policy, or where they operate against the general welfare. On the other hand, those who enter into contracts do so with reference to the law as it exists at the date thereof; and any impairment by legislative action, or otherwise, of an obligation thus created, is plainly inhibited by both the State and Federal Constitutions. However, a mere change in the remedy for the enforcement of contract rights in the courts of the State, or otherwise, is not treated as an impairment of the obligation of a contract, so long as the person whose rights arise thereunder is given a reasonable opportunity, after the creation of such a limitation, to enforce his contract. So it is, that if the statutes in question operated only as a statute of limitation, they would not be invalid under the Constitution, because they provide a reasonable time in which persons holding liens of the nature mentioned could sue to enforce the same, after the effective date of the statute. We think, however, that in this case the statutes went farther than merely to create a procedural limitation. Each made the lien invalid. That must mean invalid for all purposes. An ordinary statute of

limitation must be pleaded by the party against whom the claim is urged, otherwise it will be ignored. But a lien expressly made invalid by the Legislature has no force or effect whatever, and can never be made the basis of a decree or judgment. Under ordinary statutes of limitation, suits or actions on notes representing the money secured by a lien are at the option of the maker of the note barred at the end of the period named, leaving only the lien reserved on the face of the deed to secure the notes. When that lien is declared invalid, nothing of value is left. The original right is absolutely destroyed. For this reason, we think the Act of 1921, and the subsequent Code provision, amounted to more than a procedural statute of limitation, and in so far as they operate retroactively are unconstitutional and void.

This question has been before this Court in two recent compensation cases. One of such cases is *Greer* v. *Compensation Commissioner,* 123 W. Va. 270, 15 S. E. 2d 175. There it was held that a limitation upon the right to file a claim for injuries sustained prior to March 7, 1929, was valid because the right to file such application was not destroyed, but a reasonable time was given in which application for claims accruing prior to that date could be made. That decision comes close to the question presented in this case, and probably can only be distinguished because the Workmen's Compensation Law is a public law enforced by public authorities, and subject to a greater degree than private contracts as respects the changes which the Legislature may determine to be necessary. While the relation of employer and employee, under the Compensation Law is held to be contractual, yet we think the contract so created, being one which may be said to have been, in a measure, imposed by public authority, is subject to public regulation to a greater extent than private contracts. The *Greer* case was affirmed in *Consentina* v. *State Compensation Commissioner,* 127 W. Va. 67, 31 S. E. 2d 499. We do not think these holdings require us to sustain the demurrer in the case at bar. The importance of maintaining the force and sanctity of private contracts is too important to

allow the statutes involved to be given retroactive effect, where in a case such as is now before us, it is apparent that the very right and substance of the contract is not only impaired but absolutely destroyed.

We therefore reverse the ruling of the Circuit Court of Kanawha County and remand the case for a full development thereof in accordance with the views herein expressed.

*Ruling reversed.*